IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

FILED
CLERK U.S. DISTRICT COURT
DISTRICT OF DELAWARE

2005 MAY -6  PM 3:29

| | |
|---|---|
| ST CLAIR INTELLECTUAL PROPERTY CONSULTANTS, INC , a Michigan corporation, | ) )  05 - 273 ) Civil Action No _____ ) |
| Plaintiff, | ) ) |
| v | ) ) **COMPLAINT** |
| MIRAGE SYSTEMS, INC , a California corporation, GEORGE J MOUSSALLY, an individual, and KENNETH L FORD, an individual, | ) **JURY TRIAL DEMANDED** ) ) ) |
| Defendants | ) ) ) |

Plaintiff St Clair Intellectual Property Consultants, Inc , ("St Clair") for its complaint against Defendants Mirage Systems, Inc , George J Moussally, and Kenneth L Ford (collectively referred to as "the Defendants"), states and alleges as follows:

### NATURE OF THE ACTION

1        This is action for judicial declaration of ownership rights and to quiet title to certain intellectual property of St Clair and for tort damages against the Defendants for undermining St Clair's ownership rights and interfering with its ability to license its patents: United States Patent Nos 5,138,459 (the "'459 patent"), 5,576,757 (the "'757 patent"), 6,094,219 (the "'219 patent"), 6,233,010 (the "'010 patent"), 6,323,899 (the "'899 patent"), and 6,496,222 (the "'222 patent"), together with all divisions, continuations, applications, foreign patents and applications, and all reissues and re-examinations (collectively, the "patents-in-suit") The invention claimed in the patents-in-suit together with all right, title and interest to the invention and patents-in-suit is the "St Clair Intellectual Property "

1

## THE PARTIES

2      Plaintiff St Clair is a Michigan corporation having its principal place of business at 16845 Kercheval Avenue, Suite Number Two, Grosse Pointe, Michigan 48230-1551

3      On information and belief, Defendant Mirage Systems, Inc ("Mirage"), is, and at all relevant times has been, a corporation organized and incorporated under the laws of the State of California    Mirage's principal place of business is at 1031 E Duane Street, Suite F, Sunnyvale, California 94085

4      On information and belief, Defendant George J Moussally, is, and at all relevant times has been, an officer of Mirage, currently residing at 33185 Lark Way, Fremont, California 94555.

5      On information and belief, Defendant Kenneth L Ford, is, and at all relevant times has been, an officer of Mirage, currently residing at 1040 Vista Oak, San Jose, California 95132

## OTHER ENTITY

6      On information and belief, Mount and Stoelker, P C has its place of business at River Power Tower, Suite 1700, 333 West San Carlos, San Jose, California 95110-2740   Mount and Stoelker, P C is an unnamed co-conspirator as alleged in this complaint

## JURISDICTION

7      An actual controversy has arisen and now exists between St Clair and the Defendants concerning their respective rights to the St Clair Intellectual Property

8      This action arises under the federal patent statute, 35 U S C § 261, the Federal Declaratory Judgment Act, 28 U S C §§ 2201 and 2202, and under California and Delaware

2

State law between diverse parties where the amount in dispute exceeds $75,000  This Court therefore has subject matter jurisdiction under 28 U S C §§ 1331, 1332, 1338(a) and 2201

9    Personal jurisdiction over Defendants comports with the United States Constitution and 10 Del C § 3104 because Defendants have done business in Delaware and have caused and continue to cause tortious injury to St Clair in the State of Delaware as alleged in this complaint  In addition or in the alternative, the Defendants have submitted themselves to the jurisdiction of the U S District Court for the District of Delaware through several declarations filed in *St Clair v Canon Inc, et al*, Civil Action No 03-241 (JJF), and by voluntarily appearing in court, prepared to testify in the *St Clair v Canon Inc, et al* trial

## VENUE

10    Venue is proper in this district under 28 U S C § 1391(a) because a substantial part of the events giving rise to St Clair's allegations occurred in the State of Delaware

## FACTUAL BACKGROUND

11    St Clair owns the St Clair Intellectual Property, including United States Patent Nos 5,138,459 (the "'459 patent"), 5,576,757 (the "'757 patent"), 6,094,219 (the "'219 patent"), 6,233,010 (the "'010 patent"), 6,323,899 (the "'899 patent"), and 6,496,222 (the "'222 patent")

12    The St Clair Intellectual Property revolutionized the digital camera industry, enabling the rapid growth and commercial success of digital cameras

13    St Clair has licensed its patents to many of the largest manufacturers of digital cameras in the world including: (1) Sony Corporation; (2) Nikon Corporation; (3) Minolta Co, Ltd; (4) Olympus Optical Co, Ltd; (5) Seiko Epson Corporation; (6) Casio Computer Co; (7) Kyocera Corporation; (8) Pentax Corporation; and (9) Samsung Techwin Co Ltd

3

14    The named inventors on the patents-in-suit are Marc K. Roberts, Matthew K. Chikosky and Jerry A. Speasl ("the Inventors")

15    The Inventors conceived their digital camera invention no later than the holiday season in 1989. Between the conception of their digital camera invention in 1989 and the filing of their original patent application in the United States Patent and Trademark Office on November 20, 1990, the Inventors worked with their patent attorney, Paul W. Fish, to refine their patent application

16    At the time the Inventors conceived their invention, all three of them were Mirage employees. On information and belief, Mirage was at the time a defense contractor that provided products and services to the military and intelligence communities related to radar technology

17    During the time period in which the Inventors' digital camera invention was conceived and reduced to practice, Mirage was never involved in digital camera technology of any kind.

18    On June 29, 1987, Mirage hired Jerry A. Speasl as Director of Business Development. Mr. Speasl left Mirage's employ on August 9, 1991.

19    On March 27, 1989, Mirage hired Marc K. Roberts as Director of Business Development, C3I Systems. Mr. Roberts left Mirage's employ on January 31, 1992.

20    On August 28, 1989, Mirage hired Matthew A. Chikosky as Manager of Special Projects Engineering. Mr. Chikosky left Mirage's employ around April 1996

21.    Both prior to and after the filing their patent application for their digital camera invention, the Inventors disclosed their digital camera invention to officers of Mirage

4

22     By way of example only, at a lunch meeting on or about December 1, 1992, Mr. Roberts met with Fred J. Heinzmann, Mirage's Co-Founder, Vice President of Engineering and Senior Technical Advisor, and described his digital camera invention in detail.

23     At no time during the lunch meeting or any point thereafter did Mr. Heinzmann state that he believed the Inventors' digital camera invention would be the property of Mirage.

24     The Inventors each had one or more conversations with high-ranking executives within Mirage about their digital camera invention during the period prior to the '459 patent's issuance on August 11, 1992 and shortly thereafter. At no point did any of these executives, including George J. Moussally, Fred J. Heinzmann, Daniel F. Wiener, or Phillip A. Fialer, assert or indicate that they believed that the digital camera invention was the property of Mirage.

25.     The Inventors worked on their invention on their own time during nights and weekends. During the time between their conception of their digital camera invention and the filing of their original patent application, the Inventors met frequently in Mr. Speasl's basement, hotels, restaurants, and other places separate from Mirage's offices to discuss their digital camera invention.

26     The Inventors did not use any Mirage resources in the conception of their invention. In addition, the Inventors were not aware of any business or actual or demonstrably anticipated research or development of Mirage to which their invention related, and based on information available to them, their invention was not related to the business or actual or demonstrably anticipated research or development of Mirage.

27.     On November 20, 1990, the Inventors filed their original patent application with the United States Patent and Trademark Office that ultimately issued on August 11, 1992 as the '459 Patent. A true and correct copy of the '459 patent is attached as Exhibit A.

5

28    On July 29, 1993, the Inventors filed a related patent application with United States Patent and Trademark Office that ultimately became the '757 patent, issued on November 19, 1996  A true and correct copy of the '757 patent is attached as Exhibit B

29    On May 22, 1996, St  Clair filed a related patent application with the United States Patent and Trademark Office that ultimately became the '219 patent, issued on July 25, 2000  A true and correct copy of the '219 patent is attached as Exhibit C

30    On February 19, 1999, St  Clair filed a related patent application with the United States Patent and Trademark Office that ultimately became the '010 patent, issued on May 15, 2001  A true and correct copy of the '010 patent is attached as Exhibit D

31    On April 3, 2000, St  Clair filed a related patent application with the United States Patent and Trademark Office that ultimately became the '899 patent, issued on November 27, 2001  A true and correct copy of the '899 patent is attached as Exhibit E

32    On November 27, 2000, St  Clair filed a related patent application with the United States Patent and Trademark Office that ultimately became the '222 patent, issued on December 17, 2002  A true and correct copy of the '222 patent is attached as Exhibit F

33    On January 9, 1992, United States Patent and Trademark Office recorded the Inventors' assignment of the entire right, title and interest in their digital camera invention, including the patents-in-suit, to Personal Computer Cameras, Inc ("PCC")  A true and correct copy of the recorded assignment is attached as Exhibit G

34    The Inventors assigned the entire ownership rights to PCC   The assignment included not only the '459 patent, but all patents arising from the same application

35    On the face of the '459 patent, PCC is listed as the assignee

6

36     On November 1, 1995, St. Clair purchased the '459 patent and all related patents and applications together with all of the St. Clair Intellectual Property from PCC with the execution of a Patent Purchase Agreement between the two companies. A true and correct copy of the Patent Purchase Agreement is attached as Exhibit H.

37.    Under the terms of the Patent Purchase Agreement, St. Clair agreed to pay PCC $60,000 up front as well as 50% of net licensing revenue related to the enforcement and licensing of the patent rights. PCC assigned "all right, title and interest in and to the [St. Clair Intellectual Property]" to St. Clair. The assignment assigned not only the '459 patent, but the invention disclosed therein and all related patents arising from the same application.

38     Under the terms of the Patent Purchase Agreement, PCC warranted that it was "the owner of all right, title and interest in and to the [St. Clair Intellectual Property]."

39     Prior to purchasing the St. Clair Intellectual Property from PCC, St. Clair diligently investigated PCC's claim of title and took title with no knowledge of any contrary claim of ownership.

40.    On January 16, 1996, St. Clair duly recorded PCC's assignment of the '459 patent and all related patents to St. Clair with the United States Patent and Trademark Office. A true and correct copy of the recorded assignment is attached as Exhibit I.

41     On the face of the '757 patent, the '219 patent, the '010 patent, the '899 patent, and the '222 patent, St. Clair is listed as the assignee.

42     St. Clair has enforced its patent rights by filing the following patent infringement lawsuits in U.S. District Court for the District of Delaware: (1) *St. Clair Intellectual Property Consultants, Inc. v. Sony Corp., et al.*, Civil Case No. 01-557 (JJF), filed on August 14, 2001; (2) *St. Clair Intellectual Property Consultants, Inc. v. Canon Inc., et al.*, Civil Case No. 03-241

7

(JJF), filed on February 28, 2003; and (3) *St. Clair Intellectual Property Consultants, Inc. v. Samsung Electronics, et al.*, Civil Case No. 04-1436 (JJF), filed on November 9, 2004

43      In enforcing St. Clair's patent rights, St. Clair has received the following damage awards: (1) On February 23, 2003, a unanimous jury in Civil Action No. 01-557 (JJF) in the U.S. District Court for the District of Delaware awarded damages to St. Clair in the amount of $25,000,000.00 for Sony Corporation's infringement of several of the patents-in-suit; (2) On October 8, 2004, a unanimous jury in Civil Action No. 03-241 (JJF) in the U.S. District Court for the District of Delaware awarded damages to St. Clair in the amount of $34,716,482.49 for Canon Inc.'s infringement of several of the patents-in-suit; and (3) On October 25, 2004, a majority jury verdict in Civil Action No. 03-241 (JJF) in the U.S. District Court for the District of Delaware awarded damages to St. Clair in the amount of $3,003,465.00 for Fuji Photo Film Co., Ltd.'s infringement of several of the patents-in-suit

44      On April 12, 2005, St. Clair had substantially completed negotiations related to license agreements with several companies including, but not limited to, defendants in pending Civil Action No. 04-1436 (JJF) in U.S. District Court for the District of Delaware

45      To allow settlement discussions to continue, St. Clair agreed to extensions of time for several defendants to answer St. Clair's patent infringement complaint

46      Many draft agreements had been exchanged between St. Clair and prospective licensees including, but not limited to, defendants in pending Civil Action No. 01-1436 (JJF) in the U.S. District Court for the District of Delaware  License agreements were on the verge of being signed

47      The license agreements would have led to payments of several tens of millions of dollars to St. Clair

8

48    In addition, St. Clair was in active negotiations with numerous other digital camera manufacturers.

49    A license agreement with any manufacturer of digital cameras would represent a significant economic benefit for St. Clair.

50    On April 12, 2005, Defendant Mirage filed a Complaint in California State court alleging ownership of the patents-in-suit.

51    One or more of the defendants in Civil Action No. 04-1436 (JJF) in the U.S. District Court for the District of Delaware and other potential licensees have withdrawn or substantially limited their settlement offers specifically because of the allegations in Mirage's Complaint and/or other non-privileged communications by Mirage and its agents regarding ownership of the St. Clair Intellectual Property.

## COUNT I
## DECLARATORY JUDGMENT OF OWNERSHIP
## PURSUANT TO 28 U.S.C. § 2201

52    St. Clair restates and realleges each of the allegations set forth in paragraphs 1 through 51 as if fully set forth herein.

53    An actual controversy exists between Mirage and St. Clair over ownership of the St. Clair Intellectual Property.

54    On April 30, 2004, Mirage entered into an agreement entitled "Consulting Agreement and Covenant Not to Sue" ("Consulting Agreement") with Canon U.S.A., Inc., one of the defendants in Civil Action No. 03-241 (JJF) in the U.S. District Court for the District of Delaware.

9

55    The agreement was signed by Defendant Kenneth L Ford, the Vice-President of Operations for Mirage, and Seymour Liebman, the Executive Vice-President of Canon U S A , Inc ("Canon")

56.    The agreement called for Canon to pay Mirage $75,000 for purported rights to practice the technology claimed in the '459, '219, '010, and '899 patents

57    Canon agreed to pay Mirage for its travel expenses, office expenses, and reimbursement for lost time incurred in cooperating with Canon to prove that Mirage owns the patents-in-suit  The agreement called for Canon to pay Mirage for lost time for any Mirage employee at the rate of $300 per hour

58    On July 22, 2004, Canon filed its Motion to Dismiss for Lack of Standing and Subject Matter Jurisdiction in Civil Action No 03-241 (JJF) in the U S  District Court for the District of Delaware  The motion to dismiss alleged that St  Clair did not own the asserted patents and further alleged that Mirage was the true owner of the asserted patents

59    Defendants George J Moussally and Kenneth L Ford, along with former and current Mirage employees, Fred J Heinzmann, Phillip A Fialer and Daniel F Wiener, all submitted one or more declarations in support of Canon's motion to dismiss

60    On September 30, 2004, during the middle of trial in Civil Action No  03-241 (JJF) in the U S  District Court for the District of Delaware, minutes before Defendant George J Moussally was going to take the stand to testify, Canon produced for the first time a copy of the Consulting Agreement by and between Mirage and Canon to St  Clair

61    Defendant Kenneth L Ford was also in the courtroom at the time  If called by Canon, Mr Ford was prepared to testify

10

62     Under the Consulting Agreement with Canon, Mirage was paid for Defendants George J Moussally's and Kenneth L Ford's time spent in Delaware

63     After St Clair informed the Court of the production of the Consulting Agreement, the Court severed Canon's ownership defense from trial  The Court then initiated proceedings with a Special Master to determine whether Canon timely produced the Consulting Agreement to St Clair and, if not, what sanctions should be recommended

64     The Defendants have been and continue to be participants in the proceedings before the Special Master in the District of Delaware

65     St Clair purchased the '459 patent and all related patents together with the St Clair Intellectual Property on November 1, 1995 from PCC for $60,000 plus one half of future net licensing revenue

66     To date, St Clair has paid PCC millions of dollars as a result of licensing the patents-in-suit to manufacturers of digital cameras  St Clair's payments to PCC represent valuable consideration

67     St Clair duly recorded its assignment with the United States Patent and Trademark Office on January 16, 1996

68     St Clair purchased the '459 patent and related patents in 1995 from PCC without knowledge of any claim of ownership by Mirage or any other defendant  Under the terms of the Patent Purchase Agreement, PCC warranted that it was "the owner of all right, title and interest in and to the [St Clair Intellectual Property]"

69     St Clair conducted a duly diligent inquiry to determine if there were any contrary claims against the title of the '459 patent together with the St Clair Intellectual Property owned by PCC  Despite a duly diligent inquiry, St Clair did not uncover any claim against the title of

11

the '459 patent, and purchased the St Clair Intellectual Property without notice of any claim to

title by Mirage, any other defendant, or any other person or entity

70     St Clair is entitled to a declaratory judgment that it owns the patents-in-suit and

the St Clair Intellectual Property

## COUNT II
## QUIET TITLE AND DECLARATION OF OWNERSHIP
## PURSUANT TO 35 U.S.C. § 261

71     St Clair restates and realleges each of the allegations set forth in paragraphs 1

through 70 as if fully set forth herein

72     St Clair has legal title to the patents-in-suit pursuant to 35 U S C § 261   Section

261 requires an alleged assignee such as Mirage to record its title with the United States Patent

and Trademark Office:

> An assignment, grant or conveyance shall be void as against any
> subsequent purchaser or mortgagee for a valuable consideration,
> without notice, unless it is recorded in the Patent and Trademark
> Office within three months from its date or prior to the date of such
> subsequent purchase or mortgage

73     Mirage has never recorded an assignment, grant or conveyance of the patents-in-

suit from the Inventors with the United States Patent and Trademark Office

74     On January 9, 1992, United States Patent and Trademark Office recorded the

Inventors' assignment of their interests in the their invention and all patents to PCC

75     St Clair purchased the '459 patent and all related patents together with the St

Clair Intellectual Property on November 1, 1995 from PCC for $60,000 plus one half of future

net licensing revenue

12

76      St Clair duly recorded its assignment with the United States Patent and Trademark Office on January 16, 1996

77      To date, St Clair has paid PCC millions of dollars as a result of licensing the patents-in-suit to manufacturers of digital cameras   St Clair's payments to PCC represent valuable consideration

78      St Clair purchased the '459 patent and related patents in 1995 from PCC without knowledge of any claim of ownership by Mirage or any other defendant   Under the terms of the Patent Purchase Agreement, PCC warranted that it was "the owner of all right, title and interest in and to the [St Clair Intellectual Property]"

79      St Clair conducted a duly diligent inquiry to determine if there were any contrary claims against the title of the '459 patent together with the St Clair Intellectual Property owned by PCC  Despite a duly diligent inquiry, St Clair did not uncover any claim against the title of the '459 patent, and purchased the St Clair Intellectual Property without notice of any claim to title by Mirage, any other defendant, or any other person or entity

80      St Clair is the only owner of the patents-in-suit and the St Clair Intellectual Property  Mirage has no rights of ownership

**COUNT III**
**QUIET TITLE AND DECLARATION OF OWNERSHIP**
**PURSUANT CAL. LABOR CODE § 2870**

81      St Clair restates and realleges each of the allegations set forth in paragraphs 1 through 80 as if fully set forth herein

82      Each of the employment agreements entered into by the Inventors was governed by Section 2870 of the California Labor Code, which states:

> (a) Any provision in an employment agreement which provides that an employee shall assign, or offer to assign, any of his or her rights in an

13

invention to his or her employer shall not apply to an invention that the employee developed entirely on his or her own time without using the employer's equipment, supplies, facilities, or trade secret information except for those inventions that either.

(1) Relate at the time of conception or reduction to practice of the invention to the employer's business, or actual or demonstrably anticipated research or development of the employer; or

(2) Result from any work performed by the employee for the employer

(b) To the extent a provision in an employment agreement purports to require an employee to assign an invention otherwise excluded from being required to be assigned under subdivision (a), the provision is against the public policy of this state and is unenforceable

83    The invention conceived by Messrs Speasl, Chikosky, and Roberts and claimed in the patents-in-suit was developed entirely on the Inventors' own time without the equipment, supplies, facilities, or trade secret information of Mirage

84    The invention did not relate at either the time of conception or reduction to practice to Mirage's business, or actual or demonstrably anticipated research or development The invention also did not result from work performed by the Inventors for Mirage

85    The protections of California Labor Code § 2870 cannot be waived by the employee   Mirage cannot claim ownership over the patents-in-suit because they fall within the safe harbor created by California Labor Code § 2870

86    The Inventors owned the patents covering their digital camera invention, duly and legally assigned the '459 patent all related patents and applications to PCC   PCC duly and legally assigned the '459 patent and all related patents and applications to St Clair together with all of the St Clair Intellectual Property

87    St Clair has legal, equitable, and all other title to the patents-in-suit together with all of the St Clair Intellectual Property

14

## COUNT IV
## QUIET TITLE AND DECLARATION OF OWNERSHIP
## PURSUANT TO CALIFORNIA STATUTE OF LIMITATIONS

88    St Clair restates and realleges each of the allegations set forth in paragraphs 1 through 87 as if fully set forth herein

89    Under California Code of Civil Procedure § 337(1), Mirage must assert any claim of ownership based the Inventors' employment agreements with Mirage within four years of the alleged breach of contract

90    Issuance of a United States patent and recordation of title in the United States Patent and Trademark Office constitute notice to the world of the patent's existence and ownership

91    Mirage had notice of the first of the patents-in-suit when the '459 patent issued on August 11, 1992

92    The Inventors also disclosed their digital camera invention to various officers within Mirage including Fred J Heinzmann, George J Moussally, Phillip A Fialer, and Daniel F Wiener, from at least before the '459 patent issued on August 11, 1992 and/or soon thereafter

93    Mirage or its officials never took any of the steps to claim ownership or sought a judicial declaration of ownership within the four-year time period

94    Any claim by Mirage to ownership of the patents-in-suit is time-barred under California law

## COUNT V
## QUIET TITLE AND DECLARATION OF OWNERSHIP
## PURSUANT TO LACHES AND ESTOPPEL

95    St Clair restates and realleges each of the allegations set forth in paragraphs 1 through 94 as if fully set forth herein

15

RLF1-2872996-1

96     Issuance of a United States patent and recordation of title in the United States Patent and Trademark Office constitute notice to the world of the patent's existence and ownership

97     Mirage had notice of the first of the patents-in-suit when the '459 patent issued on August 11, 1992

98     The Inventors also disclosed their digital camera invention to various officers within Mirage including Fred J Heinzmann, George J Moussally, Phillip A Fialer, and Daniel F Wiener, either before the '459 patent issued on August 11, 1992 and/or soon thereafter

99     Despite being aware of the Inventors' digital camera invention by at least 1992, neither Mirage nor any other defendant asserted any right of ownership over the Inventors' intellectual property rights

100    Mirage and its officers by their words and conduct demonstrated an intent not to claim any ownership in the inventions of Mirage employees

101    The Inventors, their company PCC, and St Clair relied upon the words, actions, and silence of Mirage and the other defendants to invest in, develop, and license the technology claimed in the patents-in-suit

102    Despite its awareness of the patents-in-suit, Mirage and the other defendants remained silent for an unreasonable period and misled the Inventors, PCC, and St Clair into believing that Mirage either had no ownership interest or had waived or abandoned any such interest

103    PCC's and St Clair's reliance on Mirage's and the other defendants' words, actions, and silence is and was reasonable

16

104   Therefore, it would be inequitable for Mirage or any other defendant to be

permitted to assert any ownership interest in patents-in-suit or any of the St Clair Intellectual

Property

## COUNT VI
## TORTIOUS INTERFERENCE WITH PROSPECTIVE
## BUSINESS RELATIONS

105   St Clair restates and realleges each of the allegations set forth in paragraphs 1

through 104 as if fully set forth herein

106   St Clair has licensed the patents-in-suit to at least nine major manufacturers of

digital cameras

107   In April 2005, St Clair had substantially completed negotiations related to

additional license agreements including, but not limited to, license agreements with several

defendants in the pending Civil Action No  04-1436 (JJF) in U S  District Court for the District

of Delaware

108   To allow settlement discussions to continue, St Clair agreed to extensions of time

for several defendants to answer St Clair's patent infringement complaint

109   Many draft agreements had been exchanged between St Clair and potential

licensees including, but not limited to, the defendants in the pending Civil Action No  04-1436

(JJF) in U S  District Court for the District of Delaware  The licenses were on the verge of being

signed

110   The license agreements would have led to a payments of several tens of millions

of dollars to St Clair

111   In addition, St Clair was in active negotiations with numerous other digital

camera manufacturers

17

112    A license agreement with any manufacturer of digital cameras would represent a significant economic benefit for St Clair

113    The Defendants had knowledge of St Clair's past licenses and ongoing licensing efforts of the patents-in-suit

114    On April 12, 2005, Defendant Mirage filed a Complaint in California State court alleging ownership of the patents-in-suit

115    On information and belief, Defendants George J Moussally and Kenneth L Ford conspired with Defendant Mirage to intentionally and maliciously interfere with St Clair's business relations with potential licensees by disseminating the contents of Mirage's Complaint and by making other unfounded claims of ownership of the patents-in-suit in verbal and written communications

116    At least one of St Clair's potential licensees learned of the allegations in Mirage's Complaint and/or other allegations of Mirage's claim of ownership through Mirage's agent, Mount and Stoelker, P C

117    But for the dissemination of the allegations in Mirage's Complaint and/or other allegations of Mirage's claim of ownership, at least one or more of the defendants in Civil Action No 04-1436 in the U S District Court for the District of Delaware would have settled and paid a license fee

118    As a result, several defendants in Civil Action No 04-1436 (JJF) in the U S District Court for the District of Delaware have now alleged that St Clair does not own the patents-in-suit

119    The delay and failure in licensing that has resulted from the Defendants' dissemination of the allegations in Mirage's Complaint and/or other allegations of Mirage's

claim of ownership has caused St Clair substantial damages in an amount to be proven at trial.
Damages include at least St Clair's expenses and burden of continuing litigation of cases against
defendants who would have settled but for the Defendants' tortious conduct together with lost
licensing revenue in the tens of millions of dollars

**COUNT VII**
**SLANDER OF TITLE**

120    St Clair restates and realleges each of the allegations set forth in paragraphs 1
through 119 as if fully set forth herein

121    The Defendants had knowledge of St Clair's past licenses and ongoing licensing
efforts of the patents-in-suit

122    Despite the fact that St Clair is the record title holder of the patents-in-suit,
Defendants conspired to intentionally and maliciously interfere with St Clair's business relations
with potential licensees by disseminating the contents of Mirage's Complaint and by making
other unfounded claims of ownership of the patents-in-suit in verbal and written communications
to disparage St Clair's ownership of the patents-in-suit

123    By publishing the false statements to third parties, the publications were outside
the course of judicial proceedings and not privileged  The Defendants' false statements have
been relied on by third parties to the detriment of St Clair

124    But for the disseminations of the allegations in Mirage's complaint and/or other
allegations of Mirage's claim of ownership, one or more of the defendants in Civil Action No
04-1436 in the U S District Court for the District of Delaware would have settled and paid a
license fee

19

125    The Defendants' dissemination of the allegations in Mirage's Complaint and/or other allegations of Mirage's claim of ownership has undermined the marketability of St Clair's title to the patents-in-suit

126    Because of Defendants' dissemination of the allegations in Mirage's Complaint and/or other allegations of Mirage's claim of ownership, St Clair has been unable to license the technology claimed in the patents-in-suit and this delay and failure in licensing has caused St Clair substantial damages in an amount to be proven at trial. Damages include at least St Clair's expenses and burden of continuing litigation of cases against defendants who would have settled but for the Defendants' tortious conduct together with lost licensing revenue in the tens of millions of dollars

**COUNT VIII**
**UNFAIR COMPETITION AND DECEPTIVE TRADE PRACTICES**

127    St Clair restates and realleges each of the allegations set forth in paragraphs 1 through 126 as if fully set forth herein

128    The Defendants had knowledge of St Clair's past licenses and ongoing licensing efforts of the patents-in-suit

129    Despite the fact that St Clair is the record title holder of the patents-in-suit, Defendants conspired to intentionally and maliciously interfere with St Clair's business relations with potential licensees by disseminating the allegations of Mirage's Complaint and by making other unfounded claims of ownership of the patents-in-suit in verbal and/or written communications to disparage St Clair's ownership of the patents-in-suit

130    The Defendants' false claims of ownership of the patents-in-suit create confusion and are misleading to St Clair's potential licensees

20

131    But for the dissemination of allegations in Mirage's complaint and/or other allegations of Mirage's claim of ownership, one or more of the defendants in Civil Action No 04-1436 in the U S District Court for the District of Delaware would have settled and paid a license fee

132    The Defendants' conduct has undermined the marketability of St Clair's title to the patents-in-suit

133    The Defendants, acting individually and in conspiracy with one another, have engaged in unfair competition and deceptive trade practices under 6 Del C § 2532, *et seq*

134    Because of the Defendants' dissemination of the allegations in Mirage's Complaint and/or other allegations of Mirage's claim of ownership, St Clair has been unable to license the technology claimed in the patents-in-suit and this delay and failure in licensing has caused St Clair substantial damages in an amount to be proven at trial   Damages include at least St Clair's expenses and burden of continuing litigation of cases against defendants who would have settled but for the Defendants' tortious conduct together with lost licensing revenue in the tens of millions of dollars

### COUNT IX
### CONSPIRACY

135    St Clair restates and realleges each of the allegations set forth in paragraphs 1 through 134 as if fully set forth herein

136    The Defendants had knowledge of St Clair's past licenses and ongoing licensing efforts of the patents-in-suit

137    Defendants acted in conspiracy with one another and Mirage's agent, Mount and Stoelker, P C , to intentionally, maliciously, and unlawfully interfere with St Clair's business relations with potential licensees by disseminating the contents of Mirage's Complaint and by

21

making unfounded claims of ownership of the patents-in-suit in verbal and/or written communications to disparage St. Clair's ownership of the patents-in-suit

138    Each defendant agreed with the other defendants and Mirage's agent, Mount and Stoelker, P.C., to disseminate the allegations in Mirage's Complaint and/or other allegations of Mirage's claim of ownership to St. Clair's potential licensees

139    At least one of St. Clair's potential licensees learned of the allegations in Mirage's Complaint and/or other allegations of Mirage's claim of ownership through Mirage's agent, Mount and Stoelker, P.C.

140    But for the dissemination of the allegations in Mirage's complaint, at least one or more of the defendants in Civil Action No. 04-1436 in the U.S. District Court for the District of Delaware would have settled and paid a license fee

141    The delay and failure in licensing that has resulted from the Defendants' conspiracy to disseminate the allegations in Mirage's complaint and/or other allegations of Mirage's claim of ownership has caused St. Clair substantial damages in an amount to be proven at trial. Damages include at least St. Clair's expenses and burden of continuing litigation of cases against defendants who would have settled but for the Defendants' tortious conduct together with lost licensing revenue in the tens of millions of dollars

### DEMAND FOR JURY TRIAL

142    Pursuant to Fed. R. Civ. P. 38(a), St. Clair demands a trial by jury on all issues so triable

### REQUEST FOR RELIEF

**WHEREFORE** St. Clair requests the following relief against the Defendants:

22

 A A declaration that St Clair owns full legal and equitable title to the patents-in-suit together with the St Clair Intellectual Property

 B A declaration that Defendants are liable to St Clair for tortious interference with prospective business relations and damages in an amount greater than $75,000 sufficient to compensate St Clair for its damages

 C A declaration that Defendants are liable to St Clair for slander of title and damages in an amount greater than $75,000 sufficient to compensate St Clair for its damages

 D A declaration that Defendants are liable to St Clair for unfair competition and deceptive trade practices pursuant to 6 Del C § 2532, *et seq*, an injunction, and damages in amount greater than $75,000 to compensate St Clair for its damages

 E A declaration that Defendants are liable to St Clair for conspiracy and damages in an amount greater than $75,000 sufficient to compensate St Clair for its damages

 F An award of prejudgment interest, costs and disbursements, and attorney fees

 G Granting such other and further relief as the Court may deem just and appropriate

Date: May 6, 2005

OF COUNSEL:
Ronald J Schutz, Esq
Jake M Holdreith, Esq
Becky R Thorson, Esq
Carrie M Lambert, Esq
Kimberly G Miller, Esq
ROBINS, KAPLAN, MILLER & CIRESI L L P
2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN 55402
(612) 349-8500

Frederick L Cottrell, III, Esq. (#2555)
cottrell@rlf com
Chad M Shandler, Esq (#3797)
shandler@rlf com
One Rodney Square
P O Box 551
Wilmington, DE 19899
(302) 651-7700

ATTORNEYS FOR PLAINTIFF
ST CLAIR INTELLECTUAL
PROPERTY CONSULTANTS, INC

23