# EXHIBIT H

101695

# PATENT PURCHASE AGREEMENT

This Patent Purchase Agreement is made by and between St. Clair Intellectual Property Consultants, Inc., a corporation of the State of Michigan having offices at Suite Two, 16845 Kercheval Avenue, Grosse Pointe, Michigan (SCI) and Personal Computer Cameras, Inc. a corporation of the Commonwealth of Virginia, having offices at 10497 Chace Drive, Cupertino, California (PCC).

WHEREAS, PCC is the owner by assignment and otherwise of certain PCC PROPERTY (hereinafter defined);

WHEREAS, SCI desires to purchase said PCC PROPERTY from PCC; and

WHEREAS, PCC desires to sell and assign all right, title and interest in and to said PCC PROPERTY to SCI under the terms and conditions set forth below;

NOW, THEREFORE, in consideration of the premises and the mutual promises hereinafter recited, the parties hereto agree as follows:

1.  DEFINITIONS

1.1 "PCC PROPERTY" as used herein shall mean:

   A. United States Patent No. 5,138,459 ('459 patent), together with all divisions, continuations, continuations-in-part and reissues of the '459 patent, whether issued, pending, to be filed or to be issued, and all foreign counterpart patents, patent applications and utility models of the foregoing United States patents and patent applications (hereinafter collectively referred to as "PCC PATENTS"); and

Page 1 of 10

DEPOSITION EXHIBIT 50 Defendants

CONFIDENTIAL                                                                 stclair13251

PLAINTIFF
Trial Exhibit
STX 296
St. Clair v. Canon et al.
03-cv-241

B. All trade secrets, know-how, copyrights, maskworks inventions, other intellectual property rights and proprietary technologies related to the PCC PATENTS, which trade secrets, know-how, copyrights, maskworks, inventions, other intellectual property rights and proprietary technologies are owned, assigned or licensed, in whole or in part, by or to PCC.

2. SALE AND ASSIGNMENT

2.1 Subject to the provisions of paragraphs 2.2, 2.3 and 3.1 below, PCC hereby sells, assigns, transfers and conveys unto SCI, its successors and assigns, all right, title and interest in and to the PCC PROPERTY, together with all claims, demands, or causes of action that PCC has or might have by reason of any infringement of the PCC PROPERTY prior to the Effective Date of this assignment, including the right to collect damages for such past infringement in the name of SCI.

2.2 Certain portions of the PCC PROPERTY have been licensed to some third parties prior to the Effective Date of this Agreement. The sale and assignment provided for in paragraph 2.1 above shall thus be subject to any existing license rights or releases granted under the PCC PROPERTY prior to the Effective Date of this Agreement, which existing license rights and releases shall be retained by the respective parties to whom such license rights and releases have been granted.

2.3 The assignment provided for in paragraph 2.1 above shall become effective on the Effective Date of this Agreement.

2.4 PCC shall execute all documents prepared and submitted by SCI to PCC which SCI reasonably deems necessary to effectuate fully the sale and assignment provided for in paragraph 2.1 above and to permit SCI to be duly recorded as the owner of the PCC PROPERTY.

2.5 SCI shall reimburse PCC for all out of pocket disbursements incurred by PCC in the handling and execution of any documents submitted to PCC for execution pursuant to paragraph 2.4 above.

2.6 Upon the Effective Date of this Agreement, SCI shall undertake full responsibility and shall pay all costs including without limitation, attorneys' fees and expenses for all preparation and filing of applications, prosecution, renewal, reissue and maintenance of the PCC PROPERTY. PCC shall cooperate with SCI in

CONFIDENTIAL                                                                 stclair13252

the prosecution of the PCC PROPERTY as reasonably necessary, and PCC will provide SCI with copies of all invention disclosures, notebook entries or other documents evidencing the dates of conception of the inventions covered by the claims of the PCC PROPERTY.

3. PAYMENT

3.1 In partial consideration for the sale and assignment to SCI of PCC PROPERTY, and subject to the provisions of paragraph 7.1 herein, SCI agrees to do the following:

A. Pay to PCC the sum of Forty Thousand Dollars ($40,000.00) within forty-five (45) days after the Effective Date of this Agreement;

B. Assume full responsibility for the payment of an aggregate total of up to Twenty Thousand Dollars ($20,000.00) of fees, charges and costs billed to PCC by Christie, Parker and Hale for prosecution of the PCC PATENTS by Christie, Parker and Hale prior to Effective Date of this Agreement; and

C. Pay PCC, within thirty (30) days after SCI's receipt, fifty percent (50%) of all revenue received by SCI from the licensing or sale of any part or all of PCC PROPERTY to third parties, and fifty percent (50%) of all damages or settlements received by SCI in connection with enforcement of the PCC PROPERTY, after deducting:

i. Any reasonable outside legal fees, contingent fees, and litigation expenses incurred and paid by SCI in enforcing the PCC PATENTS after the Effective Date of this Agreement;

ii. Any fees or expenses incurred and paid by SCI for prosecution of the PCC PATENTS after the Effective Date of this Agreement;

iii. Any sums paid by SCI to Christie, Parker and Hale pursuant to paragraph 3.1(B) above;

iv. Any maintenance or annuity fees for the PCC PATENTS paid by SCI after the Effective Date of this Agreement; and

Page 3 of 10

v.  Any foreign withholding taxes associated with the licensing or sale of any part of all of PCC PROPERTY from which the respective revenue was collected by SCI.

3.2 PCC shall have the right upon notice, to examine or have examined from time to time, at PCC's expense, the applicable books, records and agreements relating to such transactions in order to verify the accuracy of such reports. If it is determined under generally accepted accounting principles (GAAP) that SCI's payments to PCC are less than 95% of the amount that should have been paid, SCI will pay the expenses of the examination. If it is determined under GAAP that SCI's payments to PCC are equal to or greater than 95% of the amount that should have been paid, PCC will reimburse SCI for all costs and expenses incurred by SCI in participating in the examination.

4. LICENSE GRANT

4.1 As further partial consideration for the sale and assignment of the PCC PROPERTY to SCI, SCI hereby grants PCC a perpetual, irrevocable, personal, non-exclusive, non-transferable, fully-paid up, worldwide license under the PCC PROPERTY to:

A.  Sell or lease any product, part, component or device;

B.  Make, have made, and import any product, part, component or device for sales and;

C.  Sublicense the United States Government to make, have made, import and use any product, part, component or device for government purposes.

4.2 The license grant under the PCC PROPERTY as provided for in paragraph 4.1 above shall be deemed to not include any right to grant sublicenses, except as specifically stated in subparagraph 4.1(C) above.

5. WARRANTIES AND DISCLAIMERS

5.1 Subject to the provisions of paragraphs 2.2 above and 5.2 below, PCC represents and warrants that it is the owner of all right, title and interest in and to the PCC PROPERTY, and PCC has the right to sell and assign to SCI such right, title and interest therein.

Page 4 of 10

CONFIDENTIAL    stclair13254

5.2 The PCC PROPERTY is being sold "AS IS" to SCI, and PCC makes no warranty or representation, express or implied, with respect to the validity, enforceability or infringement of any part or all of the PCC PROPERTY, except as otherwise provided in paragraph 5.4 below.

5.3 PCC further represents and warrants that:

A.  There are no licenses, releases or other rights granted to third parties under part or all of the PCC PROPERTY, except for those specified in Exhibit A attached hereto (EXISTING LICENSES);

B.  The EXISTING LICENSES are non-transferable and without the right to grant sub-licenses; and

C.  PCC will timely provide SCI with copies of all agreements, memoranda, understandings, and other documents which contain, memorialize, evidence, mention or otherwise relate to the EXISTING LICENSES, such that SCI can fully evaluate the EXISTING LICENSES during the due diligence period provided for in paragraph 7.1 below.

5.4 PCC represents and warrants that it has no knowledge of any information, facts or circumstances that render any patent or patent application included in the PCC PROPERTY invalid or unenforceable, and that the patents and patent applications included in the PCC PROPERTY were not procured from the U.S. Patent and Trademark Office through violation of 37 C.F.R. 1.56.

6. NOTICES

6.1 All notices, requests, demands and other communications under this Agreement or in connection herewith shall be given to the respective parties hereto in writing, shall be served by facsimile transmission confirmed by mail, and shall be deemed to have been given when deposited in the mail with postage prepaid and addressed as follows:

If to PCC:              Mr. Byron Rovegno
                        10497 Chace Drive
                        Cupertino, California  95014

Page 5 of 10

CONFIDENTIAL                                                    siclair13255

```
                              Facsimile No.: (408) 735-1171

If to SCI:       Mr. Thomas W. Baumgarten, Jr.
                 Vice President
                 St. Clair Intellectual
                 Property Consultants, Inc.
                 Suite No. Two
                 16845 Kercheval Ave.
                 Grosse Pointe, MI  48230  USA

                 Facsimile No.: (313) 884-8457
```

Either party may change the above designated recipients and addresses for such notice by providing the appropriate information in writing to the other party.

7.  **DUE DILIGENCE**

7.1 Upon execution of this Agreement by both parties, SCI will have a thirty (30) day period to perform due diligence with regard to the PCC PROPERTY. During this due diligence period, SCI shall have the unconditional right, without having to provide comment or reason, to terminate this Agreement and all obligations and rights of the parties under this Agreement, without resulting in any claims or liability between the parties hereto.

7.2 At any time prior to the expiration of the thirty (30) day due diligence period specified in paragraph 7.1 above, SCI may waive, by written affirmation, SCI's right to perform due diligence under paragraph 7.1. In the event of such waiver by SCI, said due diligence period will be immediately deemed to have expired.

8.  **RIGHT OF FIRST REFUSAL**

8.1 In the event SCI proposes to enter into a firm agreement with a third party for the sale of the PCC PROPERTY or any portion thereof to the third party, SCI shall give PCC notice of such proposed sale. PCC shall then have thirty (30) days from the date of such notice by SCI to provide SCI with notice that PCC wishes to purchase the PCC PROPERTY on the same terms and conditions as those negotiated by SCI for the sale of the PCC PROPERTY to said third party.

Page 6 of 10

8.2 In the event PCC provides SCI with notice that PCC desires to purchase the PCC PROPERTY or any portion thereof as provided for in paragraph 8.1 above, SCI shall submit to PCC a purchase agreement providing for the sale of the PCC PROPERTY to PCC on the same terms and conditions as the third party sale proposed by SCI. PCC shall then fully execute said purchase agreement and return the same to SCI within fourteen (14) days after receiving said purchase agreement from SCI.

8.3 In the event PCC does not provide SCI with notice of PCC's intent to purchase the PCC PROPERTY as provided for in paragraph 8.1 above, or PCC does not provide SCI with a fully executed purchase agreement as provided for in paragraph 8.2 above, PCC shall be deemed to have waived its rights to purchase the PCC PROPERTY under paragraphs 8.1 and 8.2 above, and SCI may proceed with the proposed sale of the PCC PROPERTY to a third party without any recourse by PCC.

8.4 Notwithstanding anything to the contrary in this Agreement, the filing of any patent application, issuance of any patent, maintenance of any patent or patent application, or abandonment of any patent or patent application included in or related to the PCC PROPERTY shall be solely within the discretion of SCI without notice to PCC.

8.5 Notwithstanding anything to the contrary in this Agreement, the granting to third parties of any licenses, releases or other rights under any part or all of the PCC PROPERTY shall be within the sole discretion of SCI without notice to PCC.

9.  MISCELLANEOUS

9.1 Upon expiration of the due diligence period specified in Paragraph 7.1 above, the Effective Date of this Agreement shall be deemed to be the date this Agreement was executed by both parties hereto.

9.2 This Agreement sets forth the entire agreement and understanding by and between the parties hereto and merges all prior discussions and agreements previously entered into regarding the subject matter hereof, and neither party shall be bound by any addition to or modification of this Agreement with respect to the subject matter of this Agreement or waiver of any provision of this Agreement, other than as is expressly provided in writing and signed by a duly authorized representative of the party to be bound thereby.

Page 7 of 10

CONFIDENTIAL                                                                                                                stclair13257

9.3 The parties agree that execution of this Agreement by facsimile shall have the same force and effect as execution of an original Agreement.

9.4 Headings and captions are for convenience only and are not to be used in the interpretation of this Agreement.

9.5 If any provision of this Agreement is held by a court of competent jurisdiction to be illegal, invalid or unenforceable, that provision shall be limited or eliminated to the minimum extent necessary so that this Agreement shall otherwise remain in full force and effect and enforceable.

9.6 SCI shall not assign or transfer this Agreement or any of its rights, duties or obligations hereunder without the prior written consent of PCC.

9.7 PCC shall not assign or transfer this Agreement or any of its rights, licenses, duties or obligations hereunder without the prior written consent of SCI.

10. **TERMINATION**

10.1 This Agreement may be terminated by PCC for cause immediately by written notice in the event:

   A. SCI ceases to do business, or otherwise terminates its business operations; or

   B. SCI materially breaches this Agreement and fails to cure such breach within 30 days (10 days in the case of a failure to pay) of written notice by PCC describing the breach; or

   C. SCI becomes insolvent or seeks protection under any bankruptcy, receivership, trust deed, creditors arrangement, composition or comparable proceeding, or if any such proceeding is instituted against SCI (and not dismissed within 90 days).

10.2 In the event of any termination under Paragraph 10.1 above, all of SCI's rights, title and interest in and to the PCC PROPERTY shall immediately revert to PCC. SCI agrees to perform all acts including, without limitation, execution of documents upon PCC's request, necessary to evidence, perfect, and obtain such reversion.

Page 8 of 10

CONFIDENTIAL    stclair13258

10.3  In the event SCI sells the PCC PROPERTY, or any portion thereof, to a third party in accordance with Paragraphs 8.1 through 8.5 of this Agreement, all rights and interests of PCC under Paragraphs 10.1 and 10.2 above shall immediately terminate.

10.4  This Agreement may be terminated by SCI for cause immediately by written notice in the event:

  A.  PCC ceases to do business, or otherwise terminates its business operations; or

  B.  PCC materially breaches this Agreement and fails to cure such breach within 30 days of written notice by PCC describing the breach;

  C.  PCC becomes insolvent or seeks protection under bankruptcy, receivership, trust deed, creditors arrangement, composition or comparable proceeding, or if any such proceeding is instituted against PCC (and not dismissed within 90 days).

IN WITNESS WHEREOF, the duly authorized representatives of the parties hereto have caused this Agreement to be executed.

Personal Computer Camera, Inc.        St. Clair Intellectual
                                      Property Consultants, Inc.

By: _____          By: _____
                                         Edmund M. Chung
                                         President

Date: Nov 1, 1995                     Date: November 21, 1995

Page 9 of 10

EXHIBIT A

EXISTING LICENSES

Agreement dated November 24, 1993 by and between Personal Computer Cameras, Inc. and Aura Associates.

Agreement dated June 13, 1994 by and between Personal Computer Cameras, Inc. and Aura Associates.

Agreement dated September 19, 1994 by and between NEC Corporation, a Japanese corporation having its principal place of business at 7-1, Shiba 5-Chome, Minato-ku, Tokyo 109-01, Japan (NEC) and Aura Associates Inc., a California corporation having its principal place of business at 2605 South Winchester Boulevard, Campbell, CA 95008, and Personal Computer Cameras, Inc., a Virginia corporation having its principal place of business at 2605 South Winchester Boulevard, Campbell, CA 95008.

Page 10 of 10

CONFIDENTIAL                                                                                       stclair13260