G

Not Reported in F.Supp.  
Not Reported in F.Supp., 1995 WL 330730,  Unempl.Ins.Rep. (CCH) P 22,138  
**(Cite as: Not Reported in F.Supp.)**

Page 1

Not Reported in F.Supp., 1995 WL 330730, Unempl.Ins.Rep. (CCH) P 22,138  
Briefs and Other Related Documents

United States District Court, D. Delaware.  
**Pamela J. HORACK, Plaintiff,**  
v.  
**Darrell J. MINOTT, Secretary of Labor for the State of Delaware,  
and Robert B. REICH, Secretary of Labor for the United States Department of Labor, Defendants.**  
Civ. A. No. 94-258-SLR.

May 26, 1995.

James F. Maher, of Wilmington, DE, for plaintiff.  
James J. Maxwell , Deputy Atty. Gen., State of DE, for Secretary of Labor, State of Del.  
Gregory M. Sleet , U.S. Atty., and Nina A. Pala, Asst. U.S. Atty., of Wilmington, DE, for U.S. Secretary of Labor.

*MEMORANDUM OPINION*

SUE L. ROBINSON, District Judge.

I. INTRODUCTION

\*1 Before the court is defendant Robert B. Reich's FN1 motion to stay (D.I. 16), a motion in which defendant Darrell J. Minott  FN2 joins (D.I. 18) and which, by leave of court, has been expanded to address the question of whether this court has subject matter jurisdiction, pursuant to 28 U.S.C. § 1331, to grant the relief requested.  For the reasons stated below, the court concludes that defendants' motion shall be granted.

II. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Pamela J. Horack was employed as a letter press operator by Gean-Mida, Inc. ("Gean-Mida"), a Delaware corporation, from 1976 until September 8, 1993. (D.I. 1 at 2) On September 8, 1993, Gean-Mida laid off plaintiff from her position due to economic conditions. (*Id.*) Plaintiff's pay rate was $279.00 per forty hour work week. (*Id.*) Plaintiff remained unemployed by Gean-Mida from September 8 to November 8, 1993, with the exception of October 21 and November 3, 1993. (D.I. 1 at 3)

On September 19, 1993, plaintiff filed a claim for unemployment compensation with the Department of Labor of the State of Delaware.  ("Department of Labor")  (*Id.*) The Department of Labor granted plaintiff's request for unemployment compensation in the amount of $163.00 per week. (*Id.*) However, the Department of Labor subsequently reversed its decision and disqualified plaintiff from the receipt of benefits. (D.I. 1 at 2; D.I. 17, Ex. 1)

Plaintiff then filed a timely appeal on October 18, 1993. (D.I. 1 at 3)  A hearing was held before State Appeals Referee Rudolph Antonini, Jr. on November 4, 1993. (D.I. 1 at 3; D.I. 17, Ex. 3) The referee's decision denied unemployment compensation benefits to plaintiff because her husband was the one hundred percent stockholder and president of Gean-Mida.  More specifically, due to the fact that plaintiff's spouse owned the corporation for which plaintiff worked, "the wages earned by the [plaintiff] in her base period were not wages earned in covered employment." FN3 (D.I. 17, Ex. 3) (emphasis added).  The referee further stated that "if the [plaintiff] had not informed the Department of Labor that the company for whom she worked was owned by her husband, the claimant would have received unemployment compensation benefits." (D.I. 17, Ex. 3 at 2) (emphasis added). By applying the facts to Section 3302 of Title 19, Delaware Code, the referee affirmed the decision to deny plaintiff employment compensation benefits. (D.I. 17, Ex. 4 at 2)

Plaintiff next appealed the referee's decision to the Unemployment Insurance Appeal Board ("Board") on November 13, 1993. (D.I. 1 at 4) The Board affirmed the decision of the appeals referee, stating, *inter alia,* that the referee's decision was "controlled by settled Delaware Law." (D.I. 17, Ex. 4 at 2) On February 16, 1994, plaintiff sought judicial review of the Board decision by filing an appeal in Delaware Superior Court.  (D.I. 17, Ex. 5) Plaintiff subsequently filed a complaint in this court on May 18, 1994. (D.I. 1)

\*2 Plaintiff's complaint in the litigation at bar alleges that defendant Minott enforced the aforementioned Delaware statute which thereby

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in F.Supp.                                         Page 2
(Cite as: Not Reported in F.Supp.)

denied plaintiff's civil rights in violation of Section 1983 of Title 42, United States Code. Plaintiff further asserts that defendant Minott has denied her equal protection of the unemployment compensation law because of her marital status, thereby violating Section 711(a)(1)(2) of Title 19, Delaware Code. FN4 Plaintiff's complaint further alleges that defendant Reich incorrectly certified that the Delaware State Unemployment Compensation Law ("DSUCL") complied with the Internal Revenue Code, 26 U.S.C. § 3304(a). FN5 Certification under § 3304 requires, as a condition precedent, compliance with Section 303 of the Social Security Act. FN6 One element of the certification process is that state law must provide for unemployment compensation "when due." Because under the DSUCL, the Department has denied plaintiff benefits due to her marital status, plaintiff asserts that the DSUCL violates Section 303 of the Social Security Act. Finally, plaintiff asserts that the DSUCL conflicts with federal Treasury Regulation Section 31.3306(c)(5) -1(c), which states that employment of a family member by a corporation would be an exception to the general rule and entitle plaintiff to benefits. FN7

On May 20, 1994, plaintiff filed a motion to stay the proceedings in Delaware Superior Court, asserting that "[t]he outcome of the United States District Court proceeding will make the resolution of the issues by the [Delaware] Superior Court unnecessary." (D.I. 17, Ex. 7) On August 18, 1994, the Delaware Superior Court, by stipulation of the parties, remanded the controversy back to the Board for further factual determinations. (D.I. 17, Ex. 6) A hearing was scheduled before the Board on September 28, 1994. (D.I. 17, p. 5) The outcome of the hearing is not in the record before this court.

A. Standing

Defendant Reich asserts that plaintiff does not have the requisite standing to support a claim in this forum. (D.I. 20) More specifically, defendant Reich asserts that plaintiff has no injury in fact; that plaintiff cannot assert causation between defendant Reich's conduct and plaintiff's alleged injury; and finally, that even if plaintiff were to fulfill these two criteria, defendant Reich cannot personally redress plaintiff's claim. (*Id.*)

Persons who seek to invoke federal court jurisdiction must satisfy Article III of the Constitution by alleging an actual case or controversy. *City of Los Angeles v. Lyons,* 461 U.S. 95, 101 (1982) (citations omitted). In that regard, standing is "an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defenders of Wildlife,* 112 S.Ct. 2130, 2136 (1992). Standing has been defined by the United States Supreme Court as "whether the litigant is entitled to have the court decide the merits of a dispute or of particular issues." *Warth v. Seldin,* 422 U.S. 490, 498 (1975). A federal court, when considering standing, has the responsibility to satisfy itself of its own jurisdiction, even if the parties concede its existence. *Bender v. Williamsport Area School District,* 475 U.S. 534, 541 (1985), citing *Mitchell v. Maurer,* 293 U.S. 237, 244 (1934). Finally, the party invoking federal jurisdiction bears the burden of fulfilling the standing requirements. *Lujan,* 112 S.Ct. at 2136.

*3 The United States Supreme Court has announced three requirements for standing, all of which must be satisfied for a federal court to entertain a claim. In *Lujan,* the Court opined:
Over the years, our cases have established that the irreducible constitutional minimum of standing contains three elements: First, the plaintiff must have suffered an "injury in fact"-an invasion of a legally protected interest which is (a) concrete and particularized, and (b) "actual or imminent, not 'conjectural' or 'hypothetical.'" Second, there must be a causal connection between the injury and the conduct complained of-the injury has to be "fairly ... trace[able] to the challenged action of the defendant, and not.... th[e] result of the independent action [of] some third party not before the court." Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."
*Id.* (citations and footnote omitted).

In cases similar to the case *sub judice,* where the plaintiff's alleged injury arises from the government's alleged unlawful failure to regulate a third party, the plaintiff's burden is greater. *Id.* at 2137. In this circumstance,
causation and redressability ordinarily hinge on the response of the regulated (or regulable) third party to the government action or inaction-and perhaps on the response of others as well ... it becomes the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Case 1:05-cv-00273-JJF    Document 21-4    Filed 06/21/2005    Page 4 of 10

Not Reported in F.Supp.  
(Cite as: Not Reported in F.Supp.)

Page 3

burden of the plaintiff to adduce facts showing that these choices have been or will be made in such a manner as to produce causation and permit redressability of injury. Thus, when the plaintiff is not himself the object of the government action or inaction he challenges, standing is not precluded, but it is ordinarily more difficult to establish.
*Id.* (citations and internal quotations omitted).

I. Injury

In order to have standing, a plaintiff must allege that he or she has personally suffered or will suffer an injury. *Lyons,* 461 U.S. at 105-06. FN8 This injury must be sustained as a result of the challenged official conduct, and the threat of future injury must be "real and immediate." *Id.* at 102. The court finds that plaintiff has not met her burden with respect to pleading an injury or the threat of a "real and immediate" future injury.

The alleged injury in this controversy is the result of the denial of unemployment compensation benefits to plaintiff because of her marital status. However, because the Superior Court has remanded the state action to the Board for further factual determinations, plaintiff's injury is speculative at best. In its current form, this injury is insufficient to support the first standing requirement.

Assuming, *arguendo,* that plaintiff was denied unemployment compensation as a result of the final decision by the Superior Court and was able to establish an injury, two requirements of standing remain: causation and redressability.

2. Causation

*4 An alleged injury must be "fairly traceable to the Government conduct" which the plaintiff challenges as unlawful. *Allen v. Wright,* 468 U.S. 737, 757, 104 S.Ct. 3315, 3327 (1984). This component is analyzed by examining the causal connection between the alleged unlawful conduct and the alleged injury. *Id.* at 737, n. 19. In *Allen,* parents of African American public school children filed suit against the Internal Revenue Service ("IRS") because the IRS granted tax exemptions to some racially discriminatory private schools. *Id.* at 739. More specifically, the parents claimed that their children's ability to receive an education was diminished because of the funding to the private schools. *Id.* at 756. Although classified as "one of the most serious injuries recognized in our legal system," the court held the parents lacked standing because the injury was not "fairly traceable to the Government conduct." FN9 *Id.* at 756-57. The United States Supreme Court further opined that even if the tax exemption were to be withdrawn by the IRS, it is uncertain that this decision would compel the private, discriminatory schools to amend their admission policies. *Id.* at 758.

The illegal conduct allegedly performed by defendant Reich is his certification that the DSUCL complies with the requirements of Internal Revenue Code Section 3304(a). Plaintiff's alleged injury is the result of the decision by the State of Delaware, within the parameters of Internal Revenue Code Section 3304, to deny plaintiff unemployment compensation because her husband is the shareholder of greater than fifty percent of Gean-Mida. Since the federal government played no role in the decision of the State of Delaware to deny unemployment compensation to plaintiff, there is an insufficient causal link between defendant Reich's conduct and plaintiff's alleged injury.

3. Redressability

Redressability differs from causation, in that a court "examines the causal connection between the alleged injury and the judicial relief requested." *Allen,* 468 U.S. at 753, n. 19. In order to fulfill this requirement, a plaintiff must allege that a favorable court decision is likely to remedy the injury.

In the case *sub judice,* plaintiff has not specifically suggested what remedy the court should fashion to redress her alleged injury. FN10 In fact, plaintiff's suggestions would not rectify the denial of her unemployment compensation, but would instead prevent Delaware's Unemployment Insurance program from receiving federal funding. As stated in note 4 *supra,* 42 U.S.C. § 503(b) provides, *inter alia,* for "reasonable notice" and "an opportunity for a hearing" which the Secretary of Labor must afford a state when a challenge is made to the state's certification. Analogous to the *Allen* decision, a decertification of the Delaware unemployment compensation law by the Secretary of Labor would not necessarily compel Delaware to amend its criteria for unemployment compensation benefits.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Case 1:05-cv-00273-JJF    Document 21-4    Filed 06/21/2005    Page 5 of 10

Not Reported in F.Supp.                                                                   Page   4
(Cite as: Not Reported in F.Supp.)

Assuming, *arguendo,* that Delaware's unemployment compensation scheme were decertified, this action would simply prevent the Secretary of Labor from instructing the Secretary of the Treasury to provide benefits to Delaware. The reduction in federal funding for unemployment compensation would fail to provide plaintiff with a remedy.

*5 For the reasons stated, the court finds that plaintiff does not have standing to bring suit against federal defendant Reich.

B. Stay of Proceedings

Defendant Reich moved initially to stay the federal proceeding. (D.I. 16) Given the court's finding of a lack of standing with respect to plaintiff's claims against defendant Reich, said motion is moot as to this defendant. However, defendant Minott has embraced defendant Reich's motion as his own, therefore compelling this court to address it. (D.I. 18)

The court holds the inherent discretion to stay this proceeding. *Holland v. Hay,* 840 F.Supp. 1091, 1099 (E.D.Va.1994). The general rule is that the "pendency of a state court proceeding is not a reason for a federal court to decline to exercise jurisdiction established by Congress." *Sea Colony Inc. v. Alcan Aluminum Corp.,* 653 F.Supp. 1323, 1325 (D.Del.1987), *quoting Harris v. Pernsley,* 755 F.2d 338, 345 (3rd Cir.), *cert. denied,* 474 U.S. 965 (1985). However, the federal trial court, through the inherent power to control its docket, has the discretion to stay a federal proceeding. *Sea Colony,* 653 F.Supp. at 1326. The United States Supreme Court has held that a federal court may stay a proceeding where parallel state court proceedings exist and "exceptional" circumstances make abstention appropriate. *Holland,* 840 F.Supp at 1098-99, *citing Colorado River Conservation Dist. v. United States,* 424 U.S. 800, 818 (1975).

These two prerequisites, parallel proceedings and "exceptional" circumstances, are fundamental requirements in a federal court's decision to stay a proceeding. *Sea Colony,* 653 F.Supp. at 1326. A parallel proceeding does not necessarily require the claims be identical, but rather "substantially similar." *Id., citing Guenveur v. State Farm Mutual Ins. Co.,* 551 F.Supp 1044, 1046 (D.Del.1982)

(The court concluded parallel proceedings existed where the plaintiff participated in both the state and federal proceedings, both primary defendants were insurers, and the primary issue concerned the liability of an uninsured motorist and the amount of damages.) Lawsuits are considered parallel if "substantially the same parties litigate substantially the same issues in different forums." *New Beckley Mining Corp. v. International Union, UMWA,* 946 F.2d 1072, 1073 (4th Cir.1991), *cert. denied,* 112 S.Ct. 1587 (1992). Parallel proceedings will not be considered dissimilar because the federal action encompasses an additional claim. FN11 *Guenveur,* 551 F.Supp. at 1046. In the case *sub judice,* the federal and state lawsuits arise out of the decision by the Board to deny plaintiff unemployment compensation benefits; plaintiff has described the proceedings as parallel in her motion for stay presented to the Delaware Superior Court (D.I. 17, Ex. 7); and the issues of both proceedings concern plaintiff's eligibility and ability to recover unemployment compensation benefits. These cases are clearly parallel.

*6 With parallelism established, "the party seeking the stay must 'carry the burden of demonstrating that adequate grounds exist to justify granting the stay.' " *Holland,* 840 F.Supp. 1099, *quoting Sea Colony,* 653 F.Supp. at 1326. The defendant must demonstrate either the existence of "exceptional circumstances" or "a clear case of hardship or inequity in being required to go forward" before the court will issue a stay. *Sea Colony,* 653 F.Supp. at 1326, *citing Guenveur,* 551 F.Supp. at 1046 (*noting Colorado River,* 424 U.S. at 817-19). The district court must balance its "virtually unflagging obligation" to exercise jurisdiction with factors that militate against the exercise of jurisdiction. *Id.* As stated in *Moses H. Cone Hospital v. Mercury Construction Corp.:*
The decision of whether to dismiss a federal action because of parallel state court litigation does not rest on a mechanical checklist, but on a careful balancing of the important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction. The weight to be given to any one factor may vary greatly from case to case, depending on the setting of the case. 460 U.S. 1, 16 (1982). The Supreme Court has further counseled:
[O]ur task in such cases as this is not to find some substantial reason for the exercise of federal

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Case 1:05-cv-00273-JJF    Document 21-4    Filed 06/21/2005    Page 6 of 10

Not Reported in F.Supp.                                                                 Page   5
(Cite as: Not Reported in F.Supp.)

jurisdiction by the district court; rather the task is to ascertain whether there exist "exceptional" circumstances, the "clearest of justifications," that can suffice under *Colorado River* to justify the surrender of that jurisdiction.... [T]he presence of federal-law issues must always be a major consideration weighing against surrender.
*Id.* at 25-26 (emphasis in original).

In *Colorado River,* the United States Supreme Court identified several factors federal courts should consider in determining whether exceptional circumstances exist in a particular case: (1) the inconvenience of the federal forum; (2) the desirability of avoiding piecemeal litigation; (3) the order in which the proceedings were initiated; and (4) the presence of a *res* or property over which jurisdiction has been asserted. *Sea Colony,* 653 F.Supp. at 1326, citing *Harvey & Harvey v. Delaware Solid Waste Authority,* 600 F.Supp. 1369, 1375 (D.Del.1985). Two additional criteria were considered by Justice Brennan in *Moses H. Cone Hospital:* (5) whether federal law provides the rule of decision on the merits, 460 U.S. at 23, and (6) the adequacy of the state court proceedings to protect plaintiff's rights. *Id.* at 26; *Sea Colony,* 653 F.Supp. at 1326. Furthermore, this court has considered three additional factors: (7) the identity of the issues in the two forums; (8) the existence of a federal policy militating either in favor of or against the stay; and (9) the existence of an important countervailing federal interest which federal courts might be more likely than state courts to respect or enforce. *Id.* at 1326-27. A consideration of these nine criteria follows *seriatim.*

1. Inconvenience of the Federal Forum

*7 Convenience in this context refers to the "ease of access to sources of proof, availability of compulsory process and enforceability of judgments." *Sea Colony,* 653 F.Supp. at 1327, ( citing *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508 (1947), *cited with approval in Colorado River,* 424 U.S. at 818; *accord Gilbane Bldg. Co. v. Nemours Foundation,* 568 F.Supp 1085, 1089 (D.Del.1983)). Defendant Minott does not directly challenge the convenience of this forum, but rather its appropriateness due to the nature of this lawsuit. FN12 Because the moving party carries the burden of proving the inconvenience of the forum and defendant failed to properly address this requirement, the court finds that defendant Minott has not sufficiently demonstrated that the federal forum is inconvenient.

2. Avoidance of Piecemeal Litigation

Defendant Minott asserts that the avoidance of piecemeal litigation and the *Pullman* abstention doctrine further the court's granting a stay in this case. (D.I. 17 at 6) In furtherance of this assertion, defendant posits that if plaintiff were to receive the unemployment compensation she seeks from either the Board or the Superior Court, her claim in federal court would be moot. (D.I. 17 at 6-7) If moot, there would be no case or controversy for this court to decide. Additionally, plaintiff would have received the injunctive relief she requested due to the reversal of the decision of the Board, and a declaratory judgment by this court would amount to no more than an advisory opinion which is outside this court's jurisdiction. (D.I. 17 at 7-8)

As stated in *Sea Colony,* this court should analyze the possibility of satisfactory adjudication in the state forum, the joinder of necessary parties, and whether parties are amenable to process. *Sea Colony,* 653 F.Supp. at 1327, citing *Brillhart v. Excess Ins. Co.,* 316 U.S. 491, 495 (1942), *cited with approval in Colorado River,* 424 U.S. at 818, *see also Gilbane,* 568 F.Supp. at 1090. With respect to the satisfactory adjudication in the state forum, the issues in the state and federal proceedings are identical in that they hinge on the denial of plaintiff's unemployment compensation benefits. If the State of Delaware were to reverse its decision and thereby award plaintiff the unemployment compensation originally requested, it is unclear how plaintiff could assert an injury, which is a required element of 42 U.S.C. § 1983. FN13 Therefore, plaintiff would lack standing to assert a claim against either defendant in this forum.

3. Order In Which Jurisdiction Was Obtained

It is clear that the state court proceedings were initiated approximately three months before the federal lawsuit. However, analysis of the priority factor does not necessarily rely on the proximity of the filing of complaints. The proper analysis has been described as follows:
This [priority] factor, as with the other *Colorado River* factors, is to be applied in a pragmatic,

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in F.Supp.  
(Cite as: Not Reported in F.Supp.)

Page 6

flexible manner with a view to the realities of the case at hand. This, priority should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions.

*8 *Moses H. Cone Hospital,* 460 U.S. at 21.

*Sea Colony* provides a clear illustration of the application of the priority factor. In *Sea Colony,* the federal proceedings were initiated over a year before the state proceeding. *Sea Colony,* 653 F.Supp. at 1325. Discovery had begun, trial was scheduled, and the pretrial conference was held. *Id.* at 1328. Despite the advanced procedural nature of the case, the court was unable to "conclude substantial steps have been taken in [federal court]," and the stay was granted. *Id.* at 1328-29.

Defendant in this controversy asserts that because the action before the Superior Court has been reviewed and remanded for further factual determinations, that proceeding should have priority. Furthermore, if the Board, upon remand, should find in favor of plaintiff and grant the requested unemployment compensation, the case in federal court would be moot.

Defendant's argument has merit. The Delaware Superior Court denied plaintiff's motion to stay the state court proceeding and remanded the case back to the Board for further factual determinations. (D.I. 17, Ex. 6) Defendant correctly notes that a favorable decision by the Board upon remand could vitiate plaintiff's basis for a claim in federal court. This factor, in the absence of a final determination of the Superior Court, weighs heavily in favor of granting the stay. The federal proceeding "has not reached the stage where it would be unjust to stay ... the suit pending the outcome of the [state] litigation." *Holland,* 840 F.Supp. at 1101 (*citing Sea Colony,* 653 F.Supp. at 1328).

4. Presence of a *Res* or Property

Neither the state nor federal court has asserted jurisdiction over property in this proceeding.

5. Rule of Decision on the Merits

The fifth factor to consider is whether state or federal law will supply the rule of decision. *Gilbane,* 568 F.Supp. 1085, 1091 (D.Del.1983).

The Supreme Court has held that the presence of federal law issues is a major consideration weighing against the surrender of jurisdiction. *Moses H. Cone Hospital,* 460 U.S. at 26. Defendant asserts that this case presents a question of state, not federal law. In support of this contention, defendant argues that the Social Security Act and Delaware law reserve exclusive jurisdiction of unemployment compensation benefit determinations to the state. Plaintiff asserts that the fundamental issue is the constitutional right to equal protection in determining unemployment compensation benefits. (D.I. 17 at 6)

The statute which provides plaintiff the jurisdictional basis for her claim in this forum is 42 U.S.C. § 1983. Clearly, federal law provides the rule of decision for controversies arising out of a civil rights claim. However, because of the tenuous and conjectural nature of plaintiff's claim, the court finds plaintiff's assertion misplaced. Standing, as discussed *supra,* is a necessary requirement of any case brought before this court, regardless of an alleged violation of federal law by a government entity.

6. Adequacy of the State Court Proceeding to Protect Plaintiff's Rights

*9 The sixth factor relates to the ability of the state court to adequately protect plaintiff's rights. *Moses H. Cone Hospital,* 460 U.S. at 26; *accord Holland,* 840 F.Supp. at 1101. As previously stated, the questionable nature of plaintiff's injury, coupled with the possibility of complete relief from a Board decision in favor of plaintiff, leads to the conclusion that this factor weighs in favor of granting the stay.

7. Identity of Issues

The state and federal court proceedings are parallel and the issue in both forums arises out of the denial of unemployment compensation to the plaintiff because of her marital status. Until the state court proceeding produces a final determination, it is unclear what plaintiff's claim and/or injury is before this court.

8. Federal Policy Militating in Favor or Against the Stay

In *Sea Colony,* the court considered two federal

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Case 1:05-cv-00273-JJF   Document 21-4   Filed 06/21/2005   Page 8 of 10

Not Reported in F.Supp.                                                                    Page    7
(Cite as: Not Reported in F.Supp.)

policies which militated in favor of granting the stay: judicial economy and comity between state and federal courts. 653 F.Supp. at 1329. These two considerations weigh in favor of granting the stay in this case, because a final determination has not yet been reached in the state proceeding.

9. Important Countervailing Federal Interest Which Federal Courts Are More Likely to Respect

At this stage of the proceeding, there is no concrete federal interest present which a federal court is more likely to respect or enforce than the state court. The absence of this factor counsels in favor of granting the stay. *Id.* at 1329, citing *Guenveur,* 551 F.Supp. at 1048.

III. CONCLUSION

The court concludes that plaintiff does not have the requisite standing to file a claim against defendant Reich. Therefore, this defendant shall be dismissed from these proceedings. Furthermore, after a careful balancing of the aforementioned factors, exceptional circumstances do exist which mandate the exercise of discretion to stay the federal action pending the resolution of the state court proceeding. The granting of the stay would not create a hardship upon the plaintiff or be substantially unjust; rather it would better clarify plaintiff's claim before this tribunal. The federal court's interest in judicial economy suggests that this stay is appropriate. Granting the stay will avoid piecemeal litigation, clarify the federal issue before this court, and ensure that judicial resources are appropriately utilized.

An order shall issue.

FN1. Defendant Reich, the Secretary of Labor for the United States Department of Labor, was sued in both his individual and official capacities.

FN2. Defendant Minott, the Secretary of Labor for the State of Delaware, likewise was sued in both his individual and official capacities.

FN3. "Covered employment" includes employment as defined by section 3302(9) of Title 19, Delaware Code Annotated, which states, in relevant part:
(9) "Employment" means:
(A) Any service performed prior to January 1, 1978, which was employment as defined in this subdivision prior to such date and, subject to the other provisions of this subdivision, service performed after December 31, 1977, including service in interstate commerce, by
(i) Any officer of the corporation, except that the following shall not be deemed employment:
(I) When one half or more of the ownership interest, however designated or evidenced, in the corporation is, or during such employment was, owned or controlled, directly or indirectly, by the individual's spouse....

FN4. 19 Del.C. § 711 states:
(a) [I]t shall be an unlawful employment practice for an employer to:
(1) Fail or refuse to hire or to discharge any individual or otherwise to discriminate against any individual with respect to his compensation, terms, conditions or privileges of employment because of such individual's race, marital status, color, age, religion, sex or national origin; or
(2) Limit, segregate or classify its employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee because of such individual's race, marital status, color, age, religion, sex or national origin.
As stated, § 711 applies when an employer participates in an unlawful employment practice as to one of its own employees. "Employer," as defined in § 710,
includes the State or any political subdivision or board, department, commission, or school district thereof and any person employing 4 or more persons within the State, but except as hereinafter provided, does not include religious, fraternal, charitable or sectarian corporations or associations, except such corporations or associations supported, in whole or in part, by governmental appropriations....
Plaintiff is not an employee of the Department of Labor. Therefore, the court fails to see how an employment relationship exists between the plaintiff and defendant Minott such that plaintiff could invoke the status of an employee under § 711.

FN5. Section 3304 of Title 26, United States Code, provides for the approval of state unemployment compensation laws by the United States Secretary of Labor. Section 3304 lists requirements for approval by the Secretary, including, *inter alia:* 1) compensation shall be paid through public employment offices; 2) all money received in the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in F.Supp.  
(Cite as: Not Reported in F.Supp.)

Page 8

unemployment fund shall immediately upon receipt be paid over to the Secretary of the Treasury to the credit of the Unemployment Trust Fund; 3) all money withdrawn from the fund shall be used solely in the payment of unemployment compensation. The section also prescribes the procedures the Secretary of Labor should follow for notification, certification, and noncertification of any complying or non-complying state law.

FN6. Section 303 of the Social Security Act, 42 U.S.C. § 503, provides in pertinent part:
(a) Provisions Required. The Secretary of Labor shall make no certification for payment to any State unless it finds that the law of such State, approved by the Secretary of Labor under the Federal Unemployment Tax Act, includes a provision for-
(1) Such methods of administration ... as are found by the Secretary of Labor to be reasonably calculated to insure full payment of unemployment compensation when due; and
(2) Payment of unemployment compensation solely through public employment offices or other such agencies as the Secretary of Labor may approve; and
(3) Opportunity for a fair hearing, before an impartial tribunal, for all individuals whose claims for unemployment compensation are denied; and
(4) The payment of all money received in the unemployment fund of such State ... immediately upon such receipt, to the Secretary of the Treasury to the credit of the unemployment trust fund; and
(5) Expenditure of all money withdrawn from an unemployment fund of such State, in payment of unemployment compensation, exclusive of expenses of administration, and for refunds of sums erroneously paid into such fund and refunds paid in accordance with the provisions of section 3305(b) of the Federal Unemployment Tax Act ...
(6) The making of such reports ... as the Secretary of Labor may require, and compliance with such provisions as the Secretary of Labor may from time to time find necessary to assure the correctness and verification of such reports; and
(7) Making available ... the name, address, ordinary occupation and employment status of each recipient of unemployment compensation ...; and
(8) [T]he expenditure of all moneys received ... solely for the purposes and in the amounts found necessary by the Secretary of Labor for the proper and efficient administration of such State law; and
(9) [T]he replacement, within a reasonable time, of any moneys received ... which ... have been lost or have been expended for purposes other than, or in amounts in excess of, those found necessary by the Secretary of Labor for the proper administration of such state law.
(b) Failure to comply; payments stopped. Whenever the Secretary of Labor, after reasonable notice and an opportunity for hearing to the State agency charged with the administration of the State law, finds that in the administration of the law there is-
(1) a denial, in a substantial number of cases, of unemployment compensation to individuals entitled thereto under such law; or
(2) a failure to comply substantially with any provision specified in subsection (a);
the Secretary of Labor shall notify such state agency that further payments will not be made to the State until the Secretary of Labor is satisfied that there is no longer any such denial or failure to comply. Until it is so satisfied it shall make no such further certification to the Secretary of the Treasury with respect to such State: Provided, That there shall be no finding under clause (1) until the question of entitlement shall have been decided by the highest judicial authority given jurisdiction under State law; Provided further, That any costs may be paid with respect to any claimant by a State and included as costs of administration of its law.
(Emphasis added)

FN7. Treasury Regulation § 31.3306(c)(5) -1 provides, in pertinent part:
Family Employment
(a) Certain services are excepted from employment because of the existence of a family relationship between the employee and the individual employing him. The exceptions are as follows:
(1) Services performed by an individual in the employ of his or her spouse;
(2) Services performed by a father or mother in the employ of his or her son or daughter; and
(3) Services performed by a son or daughter under the age of 21 in the employ of his or her father or mother.
(c) Services performed in the employ of a corporation are not within the exception. Services performed in the employ of a partnership are not within the exception unless the requisite family relationship exists between the employee and each of the partners comprising the partnership.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in F.Supp. Page 9
(Cite as: Not Reported in F.Supp.)

(Emphasis added)

FN8. *Lyons* also stands for the proposition that if a plaintiff were to seek injunctive relief, that person must allege a "substantial likelihood" that he or she will be subject to the alleged illegal policy in the future. 461 U.S. at 111. Plaintiff Horack has not pled facts sufficient to show a likelihood of future personal injury by the state's alleged illegal conduct.

FN9. The *Allen* court held that the injury suffered by the public school children in failing to receive a desegregated education would be "fairly traceable" to unlawful IRS grants only if there were enough racially discriminatory private schools receiving grants in the respondents' communities so that a withdrawal of the exemptions would make an "appreciable difference" in public school integration. *Id.* at 758.

FN10. Plaintiff's answering brief (D.I. 22 at 6) states:
The federal defendant's role in this case has not been decided yet. It is possible that a mandatory injunction may issue from this court directing that administrative funding be withheld for Delaware's Unemployment Insurance program until discrimination against women is eliminated. It may be this court's ruling on defendant Reich's inevitable motion to dismiss, that the purpose of federal administration funding is more control than philanthropy. Whatever the Court's future ruling may be, the federal defendant is not out of this case yet.

FN11. Although not a position advanced by plaintiff, the addition of defendant Reich in the federal cause of action does not "obviate the parallel nature of the two actions." *Guenveur,* 551 F.Supp. at 1046.

FN12. Defendant Minott suggests this controversy is a question of state law rather than federal law, and that both the Social Security Act, 42 U.S.C. § 503(a)(2), and Delaware law, 19 Del.C. Ch. 13, reserve exclusive jurisdiction over the review of adverse unemployment compensation benefit determinations to the state. However, this court may exercise pendent jurisdiction over a claim brought under the Social Security Act where that claim is coupled with a constitutional claim that is not "wholly unsubstantial" or "obviously frivolous."

*Lackey v. Bowling,* 476 F.Supp. 1111, 1113-1114 (N.D.Ill.1979), citing *Hagans v. Lavine,* 415 U.S. 528, 537-38 (1974); *Wojcik v. Levitt,* 513 F.2d 725 (7th Cir.1975). Plaintiff's complaint alleges equal protection and civil rights violations pursuant to 42 U.S.C. § 1983. (D.I. 1, para. 24) Therefore, plaintiff's claims are not "wholly unsubstantial" and this court can exercise jurisdiction over the Social Security Act claim.

FN13. 42 U.S.C. § 1983 reads, in pertinent part:
Every person who ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution ... shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....
D.Del.,1995.
Horack v. Minott
Not Reported in F.Supp., 1995 WL 330730, Unempl.Ins.Rep. (CCH) P 22,138

Briefs and Other Related Documents (Back to top)

. 1:94CV00258 (Docket) (May. 18, 1994)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

