A

Daniel S. Mount, Esq. (State Bar No. 77517)
Justin T. Beck, Esq. (State Bar No. 53138)
Ron C. Finley, Esq. (State Bar No. 200549)
Mount & Stoelker, P.C.
333 West San Carlos
RiverPark Tower, 17th Floor
San Jose CA 95110-2726
Phone: (408) 279-7000
Fax:    (408) 998-1473

Attorneys for Plaintiff Mirage Systems, Inc.

**UCS**

FILED  Santa Clara Co
04/12/05   3:37pm
Kiri Torre
Chief Executive Offic
By: jeromed dtsclerk
R#200500036285
CK              $299.50
TI              $299.50
Case: 1-05-CV-039164

SUPERIOR COURT OF THE STATE OF CALIFORNIA
COUNTY OF SANTA CLARA

MIRAGE SYSTEMS, INC.,

                    Plaintiff,

vs.

JERRY SPEASL, an individual; MARK K.
ROBERTS, an individual; and MATTHEW
CHIKOSKY, an individual; ST. CLAIR
INTELLECTUAL PROPERTY
CONSULTANTS, INC., a Michigan
corporation; and JOHN DOES 1–50,
inclusive

                    Defendants.

CASE NO.  **105CV039164**

**COMPLAINT FOR DAMAGES, SPECIFIC
PERFORMANCE, INJUNCTIVE RELIEF,
DECLARATORY RELIEF, RESTITUTION,
DISGORGEMENT OF PROFITS, AND
CREATION OF A CONSTRUCTIVE TRUST**

Unlimited Jurisdiction

MOUNT & STOELKER, P.C.
333 WEST SAN CARLOS
RIVERPARK TOWER, 17TH FLOOR
SAN JOSE, CALIFORNIA 95110-2726
TELEPHONE (408) 279-7000

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Plaintiff Mirage Systems, Inc. ("Mirage") alleges:

## GENERAL ALLEGATIONS

1.     Mirage is, and was at all times relevant hereto, a corporation duly organized and existing under the laws of the State of California, doing business in the City of Sunnyvale, County of Santa Clara, State of California.

2.     Upon information and belief, Defendant Jerry Speasl ("Speasl") is an individual residing at 4172 Grant Court, Pleasanton CA  94566-7537.

3.     Upon information and belief, Defendant Mark K. Roberts ("Roberts") is an individual residing at 2836 Lemp Ave, St. Louis MO  63118-1714.

4.     Upon information and belief, Defendant Matthew Chikosky ("Chikosky") is an individual residing at 4381 Whippoorwill Dr, Hermitage PA  16148-3253.

5.     Upon information and belief, Defendant St. Clair Intellectual Property Consultants, Inc. ("St. Clair") is a corporation organized under the laws of Michigan, having its principal place of business at 10 Stratford Pl, Grosse Pointe MI  48230.

6.     The relevant events, transactions and occurrences which give rise to Plaintiff's claims or contentions, as set forth hereinafter, occurred in the State of California and in the County of Santa Clara.  Moreover, the Employment Agreements executed by Defendants Speasl, Roberts, and Chikosky specify that California law shall apply.

7.     Plaintiff is ignorant of the true names and capacities of Defendants sued herein as Does 1 through 50, inclusive, and therefore sues these Defendants by such fictitious names.  Plaintiff will amend this Complaint to allege their true names and capacities when ascertained.

8.     Upon information and belief, each of Speasl, Roberts, Chikosky (collectively, the "Inventors"), St. Clair, and Does 1 through 50 (collectively, the "Defendants") was at all times herein mentioned acting as agent, servant, representative and/or employee of each other defendant, and in doing the things hereafter alleged was acting within the scope of such agency and employment.

MOUNT & STOELKER, P.C.
333 WEST SAN CARLOS
RIVERPARK TOWER, 17TH FLOOR
SAN JOSE, CALIFORNIA 95110-2726
TELEPHONE (408) 279-7000

1    9.    Upon information and belief, each Defendant is responsible in some manner for the

2    occurrences herein alleged, and Plaintiff's damages as herein alleged were proximately caused by

3    such Defendants.

4    10.    This action involves five U.S. patents, numbered 5,138,459 (the "'459 patent"),

5    5,576,757 (the "'757 Patent"), 6,094,219 (the "'219 Patent"), 6,233,010 (the "'010 Patent"), 6,323,899

6    (the "'899 Patent"), and 6,496,222 (the "'222 Patent") (collectively, the "Mirage Patents").

7    11.    Mirage was founded in 1982 by Kenneth Ford ("Ford"), Philip Fialer ("Fialer"), F. Jud

8    Heinzmann ("Heinzmann"), Phillip Evans ("Evans"), and George Moussally ("Moussally"). Mirage's

9    business included conceiving, designing, engineering, producing, and deploying electronic

10   countermeasures technology for use by the United States against the Soviet Union during the cold

11   war.

12   12.    Mirage's proprietary technologies have both military and non-military applications.

13   13.    A component of Mirage's core technology included the conception, design,

14   engineering, production, and deployment of radar systems. Mirage's radar technology has many

15   applications, including surveillance and equipment monitoring. Mirage continues to develop new

16   applications.

17   14.    By 1988 Mirage had expanded to 150 employees between its headquarters in

18   Sunnyvale, California, and other offices in Virginia, Nevada, and Massachusetts.

19   15.    Before the Cold War ended in 1991, Mirage began efforts to reorganize and expand its

20   business to reduce its reliance on technologies designed for military applications. As part of this

21   endeavor, Mirage sought to diversity itself to maximize the commercial usefulness of its

22   technologies. Mirage conceived and built new technologies for military and commercial applications

23   concerning electronics. Mirage also conceived and developed new business opportunities within its

24   core technical capabilities.

25   16.    Mirage opened field offices to pursue new business relating to new and innovative

26   engineering solutions in which to apply Mirage's technical capabilities and to explore and develop

27   new business avenues and opportunities.

28

MOUNT & STOELKER, P.C.
333 WEST SAN CARLOS
RIVERPARK TOWER, 17TH FLOOR
SAN JOSE, CALIFORNIA 95110-2726
TELEPHONE (408) 279-7000

17. As part of this reorganization, Mirage created several new divisions, including a Communications, Command, Control, and Intelligence ("C3I") division. The new C3I division focused on marketing and providing technology and engineering solutions for the intelligence community (e.g., federal agencies such as the CIA and NSA). This included exploring new business opportunities relating to surveillance, reconnaissance, and unmanned aerial vehicles ("UAVs").

18. Defendant Speasl became an employee of Mirage in or about June 1987, as its Director of Business Development. Soon thereafter, Speasl became an officer of Mirage. On July 7, 1987, Speasl entered into a written Employment Agreement with an effective date of June 29, 1987.

19. Speasl's job duties included conceiving and developing new applications and markets for Mirage's existing technology and identifying new technologies that Mirage could develop. In the context of Mirage's high-technology industry, those duties included developing an understanding of the technological needs of government and private entities and conceiving, developing, and marketing electronic engineering products and services that could meet those needs.

20. Speasl received a performance-based compensation package in which part of his compensation was tied to the amount of new business he developed for Mirage.

21. Speasl became General Manager of the C3I division of Mirage when it was formed. Speasl hired Roberts and Chikosky in or about March and August 1989, respectively, to assist him in that capacity.

22. The duties of the C3I division, led by Speasl and worked in by Roberts and Chikosky, included conceiving, developing, and marketing new and innovative engineering solutions beyond those already found in Mirage's core technology. These duties included developing new product lines to generate new business opportunities for Mirage and to forestall the effects of the end of the Cold War on Mirage's business. An important element of the C3I division was to conceive and create new product lines for Mirage's electronic applications and capabilities, such as in its reconnaissance and surveillance applications.

23. Upon information and belief, Chikosky met with representatives of a potential Mirage customer in November or December of 1989, in the course and scope of his employment. At that meeting, the Mirage customer described to Chikosky, in his capacity as a Mirage employee, some

MOUNT & STOELKER, P.C.
333 WEST SAN CARLOS
RIVERPARK TOWER, 17TH FLOOR
SAN JOSE, CALIFORNIA 95110-2726
TELEPHONE (408) 279-7000

---

1  UAVs it had built and some features it wished to incorporate into future UAV designs. Those desired

2  features included a digital camera for taking photographs in military and commercial applications.

3       24.    That Mirage customer informed Chikosky, in Chikosky's capacity as a Mirage

4  employee, that all existing cameras it had investigated were inadequate and that a new digital camera

5  would have to be developed.

6       25.    Upon information and belief, Chikosky discussed this new digital camera idea, which

7  he had learned of in his capacity as a Mirage employee, in a meeting with Speasl and Roberts in

8  November or December of 1989. In that meeting, Chikosky informed Speasl and Roberts of the

9  specifications the Mirage customer had described to him in his capacity as a Mirage employee.

10       26.    The Inventors failed to disclose to Mirage the Mirage Patents, the digital camera

11  concept, the customer's interest in having Mirage develop the digital camera concept, or the

12  specifications the customer had described to Chikosky in his capacity as a Mirage employee — as

13  required by their Employment Agreements and their duties to Mirage.

14       27.    When each Inventor started work for Mirage, he entered into a written Employment

15  Agreement with Mirage. Each agreement specified that California law shall apply to them.

16       28.    The Inventors' Employment Agreements are substantially identical, in that they each

17  contain provisions requiring the Inventors to disclose to Mirage any proprietary information and

18  inventions they make or learn of during their employment. Each Employment Agreement also

19  contains identical provisions vesting in Mirage all rights to any proprietary information and

20  inventions made or learned of by the Inventors during their employment.

21       29.    Speasl and Chikosky represented in their Employment Agreements that they wished to

22  exclude no inventions from the operation of their agreements.

23       30.    Roberts listed three inventions in his Employment Agreement that he wished to

24  exclude from its operation. The inventions listed by Roberts in his Employment Agreement are

25  unrelated to the Mirage Patents or the subject matter thereof.

26       31.    The Inventors' job duties specifically included exploring, conceiving, and establishing

27  new business opportunities in C3I and other areas beyond Mirage's core technology for the purpose

28  of diversifying Mirage's business. This included conceiving, designing, and developing new and

MOUNT & STOELKER, P.C.
333 WEST SAN CARLOS
RIVER PARK TOWER, 17TH FLOOR
SAN JOSE, CALIFORNIA 95110-2726
TELEPHONE (408) 279-7000

1    innovative engineering solutions for the intelligence community, governmental agencies and private

2    businesses.

3        32.    During the C3I division's first year, it pursued such opportunities as incorporating

4    electronic components into aerial vehicles.  These business opportunities were pursued principally by

5    the Inventors.

6        33.    By 1991, Mirage had failed to establish sustainable new business opportunities

7    relating to the development of new innovative engineering solutions in the C3I arena.  Mirage

8    discontinued efforts to develop such business opportunities in 1992.

9        34.    Speasl resigned from Mirage in or about August 1991.  During his exit process, Speasl

10   reaffirmed to Mirage that no inventions existed that he wished to exclude from the operation of his

11   Employment Agreement.

12       35.    Roberts resigned from Mirage in or about January 1993.  During his exit process,

13   Roberts reaffirmed to Mirage that no inventions existed that he wished to exclude from the operation

14   of his Employment Agreement, except for the three inventions he had expressly listed in his

15   Employment Agreement when he had joined the company.

16       36.    At all times relevant hereto, Chikosky was an employee of Mirage.

17       37.    The Inventors filed a patent application on November 20, 1990, which issued as the

18   '459 Patent on August 11, 1992, according to records of the U.S. Patent & Trademark Office

19   ("PTO").  The '459 patent is entitled "Electronic still video camera with direct personal computer

20   (PC) compatible digital format output."

21       38.    The application for the '459 Patent is the parent of applications for several other U.S.

22   Patents, including the '757 patent, the '219 patent, the '010 patent, the '899 patent, the '222 patent.

23       39.    The Mirage Patents are unrelated to the three inventions that Roberts disclosed to

24   Mirage in his Employment Agreement.

25       40.    Upon information and belief, the Inventors caused the incorporation of Personal

26   Computer Camera, Inc. ("PCC") in Richmond, Virginia, on or about November 19, 1990.

27       41.    Upon information and belief, PCC was a corporation wholly owned and controlled by

28   the Inventors.  The Inventors were officers and directors of PCC.  All knowledge of PCC's officers

MOUNT & STOELKER, P.C.
333 WEST SAN CARLOS
RIVERPARK TOWER, 17TH FLOOR
SAN JOSE, CALIFORNIA 95110-2726
TELEPHONE (408) 279-7000

1  and directors is imputed to PCC, including the knowledge that the Inventors worked for Mirage when

2  they conceived and developed the Mirage Patents and that the Inventors were obligated to disclose

3  the Mirage Patents and the subject matter thereof to Mirage.

4      42.    Upon information and belief, during all times relevant hereto, each Inventor had actual

5  knowledge of his own Employment Agreement, his own duties to Mirage, the fact that the other

6  Inventors had executed Employment Agreements with Mirage that contained identical provisions,

7  and the duties that each Inventor owed to Mirage.  Each other Defendant had knowledge of the

8  Inventors' Employment Agreements.

9      43.    Upon information and belief, St. Clair was incorporated on or about September 25,

10  1990.

11      44.    According to PTO records, the Inventors purported to assign their rights in each

12  application for the Mirage Patents to PCC or to St. Clair at or near the time of filing.  By those acts,

13  the Inventors falsely represented to one or more third parties that they owned the rights they

14  purported to assign and disparaged Mirage's title to the Mirage Patents and the subject matter thereof.

15      45.    Upon information and belief, St. Clair acquired PCC and all of PCC's assets and

16  liabilities in or about 1995 and is PCC's successor in interest.  The terms of that acquisition called for

17  St. Clair to pay the Inventors a lump sum of cash and share of future income obtained by St. Clair

18  from the Mirage Patents.  By that act, St. Clair falsely represented to one or more third parties that it

19  owned the rights it purported to acquire from PCC and disparaged Mirage's title to the Mirage Patents

20  and the subject matter thereof.

21      46.    Upon information and belief, St. Clair knew the Inventors had worked for Mirage and

22  conceived and designed the inventions claimed in the Mirage Patents while employed by Mirage,

23  both as PCC's successor in interest and otherwise.  St. Clair knew or had reason to know that each

24  Inventor had entered into an Employment Agreement with Mirage, both as PCC's successor in

25  interest and otherwise.

26      47.    Upon information and belief, St. Clair knew or had reason to know that each Inventor

27  had worked for Mirage and that each Inventor had entered into an Employment Agreement with

28  Mirage, both as PCC's successor in interest and otherwise.

MOUNT & STOELKER, P.C.
333 WEST SAN CARLOS
RIVERPARK TOWER, 17TH FLOOR
SAN JOSE, CALIFORNIA 95110-2726
TELEPHONE (408) 279-7000

Complaint                Page 6

MOUNT & STOELKER, P.C.
333 WEST SAN CARLOS
RIVERPARK TOWER, 17TH FLOOR
SAN JOSE, CALIFORNIA 95110-2726
TELEPHONE (408) 279-7000

48.    Upon information and belief, St. Clair's primary business includes licensing and enforcing patents against third parties. Such patents include the Mirage Patents.

49.    Upon information and belief, as part of its ordinary conduct of business, St. Clair arranged and attended business meetings with third parties in California, during which it claimed to own the Mirage Patents. Upon information and belief, during those meetings in California, St. Clair accused those and other third parties of infringing the Mirage Patents and attempted to license the Mirage Patents to such third parties or otherwise derive benefit from the Mirage Patents by representing itself to be the owner of the Mirage Patents. By those acts, St. Clair falsely represented to one or more third parties that it owned rights in the Mirage Patents and disparaged Mirage's title to the Mirage Patents and the subject matter thereof.

50.    Upon information and belief, St. Clair has accused many third parties of infringing the Mirage Patents, including at least Canon, Inc.; Canon USA, Inc.; Casio, Inc.; (collectively, "Canon") Casio Computer Co., Ltd. ("Casio"); Seiko Epson Corp.; Epson America, Inc. (collectively, "Epson"); Fuji Photo Film Co., Ltd., Fuji Photo Film U.S.A., Inc.; FujiFilm America, Inc. (collectively, "Fuji"); Kyocera Corp.; Kyocera Optics, Inc. (collectively, "Kyocera"); Minolta Co., Ltd.; Minolta Corp. (collectively, "Minolta"); Nikon Corp. ("Nikon"); Olympus Optical Co. Ltd.; Olympus America, Inc. (collectively, "Olympus"); Samsung Electronics Co., Ltd.; Samsung Electronics America Inc.; Samsung Telecom America LLP (collectively, "Samsung"); Matsushita Electric Industrial Co., Ltd.; Panasonic AVC Networks Co.; Matsushita Electrical Corp. of America (collectively, "Panasonic"); Victor Company of Japan LTD ("Victor"); JVC Americas Corp.; JVC Company of America (collectively, "JVC"); Nokia Corporation; Nokia Mobile Phones; Nokia Inc. (collectively, "Nokia"); Hewlett-Packard Co. ("HP"); Eastman Kodak Co. ("Kodak"); Sony Corporation; Sony Electronics Inc.; Sony Corporation of America; and Sony Corporation (collectively, "Sony").

51.    St. Clair sued the above-named entities in at least three separate patent infringement actions in the U.S. District Court for the District of Delaware: *St. Clair Intellectual Property Consultants, Inc. v. Sony Corporation, et al.*, Case No. 1:01-cv-00557-JJF, filed on or about August 14, 2001 (the "Sony Action"); *St. Clair Intellectual Property Consultants, Inc. v. Canon Inc., et al.*,

---

Complaint                                                                Page 7

1  Case No. 1:03-cv-00241-JJF, filed on or about February 28, 2003 (the "Canon Action"); and *St. Clair*

2  *Intellectual Property Consultants, Inc. v. Samsung Electronics, et al.*, Case No. 1:04-cv-01436-JJF,

3  filed on or about November 9, 2004 (the "Samsung Action") (collectively, the "St. Clair Infringement

4  Actions"). In each St. Clair Infringement Action, St. Clair represented itself to be the owner of the

5  Mirage Patents.

6       52.    Upon information and belief, St. Clair has obtained licenses, verdicts, judgments, and

7  settlements in connection with the Mirage Patents and the above-reference actions. The value of

8  these licenses, verdicts, judgments, and settlements exceeds $60 million.

9       53.    Mirage did not learn of the Mirage Patents or the subject matter thereof until many

10  years later. Mirage learned of the Mirage Patents from a third party that was a defendant in one of

11  the St. Clair Infringement Actions.

12
13  **FIRST CAUSE OF ACTION**<br>**(BREACH OF CONTRACT)**<br>**(AGAINST SPEASL, ROBERTS, CHIKOSKY)**
14

15       54.    Plaintiff realleges and incorporates herein each and every prior allegation.

16       55.    The Inventors each entered into an Employment Agreement, a binding contract, with

17  Mirage upon commencing employment.

18       56.    Mirage did all of the things the Employment Agreements required it to do.

19       57.    Each Inventor's Employment Agreement contained many terms, including terms

20  which:

21            a.    require prompt disclosure to Mirage of all inventions and proprietary

22  information created by or discovered by the Inventors during their employment;

23            b.    provide that all inventions and proprietary information are the sole and

24  exclusive property of Mirage;

25            c.    give Mirage sole discretion to determine whether an invention or proprietary

26  information is related to or useful to its business, development, or research;

27            d.    require Mirage's written consent for the Inventors' use or disclosure of

28  inventions or proprietary information;

MOUNT & STOELKER, P.C.<br>333 WEST SAN CARLOS<br>RIVERPARK TOWER, 17TH FLOOR<br>SAN JOSE, CALIFORNIA 95110-2726<br>TELEPHONE (408) 279-7000

1            e.       expressly establish a relationship of trust and confidence between the Inventors

2    and Mirage;

3            f.       specify that California law shall apply; and

4            g.      give the employee an opportunity to disclose any inventions he wishes to

5    exclude from the operation of the agreement.

6         58.     The obligations of the Inventors quoted above were not conditioned upon the

7    occurrence of any event.

8         59.     Speasl and Chikosky elected to disclose no inventions to Mirage that they wished to

9    exclude from the operation of their Employment Agreements, either upon their hiring or upon their

10   departure.

11        60.     Roberts disclosed three inventions to Mirage that he wished to exclude from the

12   operation of his Employment Agreement upon his hiring. Those three disclosed inventions are not

13   related to the inventions claimed in the Mirage Patents. Roberts elected to disclose no inventions to

14   Mirage that he wished to exclude from the operation of his Employment Agreement upon his

15   departure.

16        61.     Mirage, at all times relevant hereto, had a right to own and possess the Mirage Patents

17   and the subject matter thereof.

18        62.     Each Inventor breached his Employment Agreement in several ways, such as by

19   failing to disclose the Mirage Patents and the subject matter thereof to Mirage and by concealing

20   those patents and inventions from Mirage. Each breach by each Inventor was willful, intentional,

21   deliberate, and in bad faith.

22        63.     Mirage was harmed by the Defendants' conduct in an amount to be proven at trial and

23   believed to be greater than the jurisdictional minimum of this court.

24        64.     Each Defendant was unjustly enriched by this conduct in an amount to be proven at

25   trial and believed to be greater than the jurisdictional minimum of this court.

26        Wherefore, Mirage prays for judgment against the Defendants as set forth below.

27

28

MOUNT & STOELKER, P.C.
333 WEST SAN CARLOS
RIVER PARK TOWER, 17TH FLOOR
SAN JOSE, CALIFORNIA 95110-2726
TELEPHONE (408) 279-7000

**SECOND CAUSE OF ACTION**
**(BREACH OF COVENANT OF GOOD FAITH & FAIR DEALING)**
**(AGAINST SPEASL, ROBERTS, CHIKOSKY)**

65.    Plaintiff realleges and incorporates herein each and every prior allegation.

66.    Each Inventor entered into an Employment Agreement, a binding contract, with Mirage upon commencing employment.

67.    Mirage did all of the things the Employment Agreements required it to do.

68.    Each Inventor's performance of his obligations under his Employment Agreement was not conditioned on the occurrence of any event.

69.    Mirage, at all times relevant hereto, had a right to own and possess the Mirage Patents and the subject matter thereof.

70.    Each Inventor unfairly interfered with Mirage's right to receive the benefits of his Employment Agreement and of the Employment Agreements of the other Inventors. Each act of such unfair interference was willful, intentional, deliberate, and in bad faith.

71.    Mirage was harmed by the Defendants' conduct in an amount to be proven at trial and believed to be greater than the jurisdictional minimum of this court.

72.    Each Defendant was unjustly enriched by this conduct in an amount to be proven at trial and believed to be greater than the jurisdictional minimum of this court.

Wherefore, Mirage prays for judgment against the Defendants as set forth below.

**THIRD CAUSE OF ACTION**
**(CONVERSION)**
**(AGAINST ALL DEFENDANTS)**

73.    Plaintiff realleges and incorporates herein each and every prior allegation.

74.    Mirage, at all times relevant hereto, had a right to own and possess Mirage Patents and the subject matter thereof.

75.    The Defendants, individually and in conspiracy with one another, intentionally took possession of the Mirage Patents and the subject matter thereof for a significant period of time.

MOUNT & STOELKER, P.C.
333 WEST SAN CARLOS
RIVERPARK TOWER, 17TH FLOOR
SAN JOSE, CALIFORNIA 95110-2726
TELEPHONE (408) 279-7000

76.    The Defendants, individually and in conspiracy with one another, prevented Mirage from having access to the Mirage Patents and the subject matter thereof for a significant period of time. Each such act by each Defendant was willful, intentional, deliberate, and in bad faith.

77.    Mirage did not consent to being deprived of ownership and possession of, or access to the Mirage Patents and the subject matter thereof.

78.    The Defendants' conduct was a substantial factor in causing harm to Mirage.

79.    Mirage was harmed by the Defendants' conduct in an amount to be proven at trial and believed to be greater than the jurisdictional minimum of this court.

80.    Each Defendant was unjustly enriched by this conduct in an amount to be proven at trial and believed to be greater than the jurisdictional minimum of this court.

Wherefore, Mirage prays for judgment against the Defendants as set forth below.

### FOURTH CAUSE OF ACTION
### (BREACH OF FIDUCIARY DUTY)
### (AGAINST SPEASL, ROBERTS, CHIKOSKY)

81.    Plaintiff realleges and incorporates herein each and every prior allegation.

82.    Each Inventor was in a fiduciary relationship with Mirage while employed by Mirage. Each Inventor's Employment Agreement expressly recognizes this relationship of confidence and trust.

83.    The Inventors, acting individually and in conspiracy with one another and with other Defendants, breached their fiduciary duties to Mirage. Each such act by each Defendant was willful, intentional, deliberate, and in bad faith.

84.    The Defendants' conduct was a substantial factor in causing harm to Mirage.

85.    Mirage was harmed by the Defendants' conduct in an amount to be proven at trial and believed to be greater than the jurisdictional minimum of this court.

86.    Each Defendant was unjustly enriched by this conduct in an amount to be proven at trial and believed to be greater than the jurisdictional minimum of this court.

Wherefore, Mirage prays for judgment against the Defendants as set forth below.

MOUNT & STOELKER, P.C.
333 WEST SAN CARLOS
RIVERPARK TOWER, 17TH FLOOR
SAN JOSE, CALIFORNIA 95110-2726
TELEPHONE (408) 279-7000

MOUNT & STOELKER, P.C.
333 WEST SAN CARLOS
RIVERPARK TOWER, 17TH FLOOR
SAN JOSE, CALIFORNIA, 95110-2726
TELEPHONE (408) 279-7000

## FIFTH CAUSE OF ACTION
## (BREACH OF DUTY OF LOYALTY)
## (AGAINST SPEASL, ROBERTS, CHIKOSKY)

87.     Plaintiff realleges and incorporates herein each and every prior allegation.

88.     Each Inventor owed Mirage a duty of loyalty as a result of his fiduciary and employment relationships with Mirage.  Mirage has the right to expect the undivided loyalty of its employees.

89.     The Inventors, acting individually and in conspiracy with one another and with other Defendants, breached their duties of loyalty to Mirage by taking action contrary to the best interests of Mirage.

90.     The Inventors were employed by Mirage when they concealed the Mirage Patents and the subject matter thereof from Mirage, when they caused PCC to be incorporated, when they reduced the inventions to practice, when they began applying for the Mirage Patents, and when they wrongfully purported to assign rights in inventions to PCC and to St. Clair.  Each such act by each Defendant was willful, intentional, deliberate, and in bad faith.

91.     The Defendants' conduct was a substantial factor in causing harm to Mirage.

92.     Mirage was harmed by the Defendants' conduct in an amount to be proven at trial and believed to be greater than the jurisdictional minimum of this court.

93.     Each Defendant was unjustly enriched by this conduct in an amount to be proven at trial and believed to be greater than the jurisdictional minimum of this court.

Wherefore, Mirage prays for judgment against the Defendants as set forth below.

## SIXTH CAUSE OF ACTION
## (MISAPPROPRIATION OF TRADE SECRETS)
## (AGAINST SPEASL, ROBERTS, CHIKOSKY)

94.     Plaintiff realleges and incorporates herein each and every prior allegation.

95.     Mirage owns many trade secrets which derive independent economic value from not being generally known to the public or to other persons who can obtain economic value from their disclosure or use.  Those trade secrets include, but are not limited to, the proprietary information,

1    inventions, improvements, and technological developments created, possessed, or discovered by

2    Mirage's employees.

3        96.     The Inventors' Employment Agreements expressly recognized the confidential,

4    proprietary, and trade secret nature of any inventions and proprietary information they create or

5    discover during their employment with Mirage. The Employment Agreements bound the Defendants

6    to protect the confidential, proprietary, and trade secret nature of such material.

7        97.     The Employment Agreements defined proprietary information to include information

8    which a) relates to the business of Mirage or to the business of any customer or supplier of Mirage, or

9    b) has been created, discovered or developed by, or has otherwise become known to Mirage, and has

10    commercial value in the business in which Mirage is engaged. As one example, by way of

11    illustration but not limitation, the Employment Agreements expressly stated that such proprietary

12    information includes inventions.

13        98.     Upon information and belief, at the time the Defendants misappropriated Mirage's

14    trade secrets, they knew or had reason to know they had acquired those trade secrets under

15    circumstances giving rise to a duty to maintain their secrecy or limit their use and knew they owed a

16    duty to Mirage to maintain their secrecy or limit their use.

17        99.     Mirage made reasonable efforts to keep such information secret, such as by entering

18    into Employment Agreements with confidentiality provisions.

19        100.    The Defendants misappropriated trade secrets belonging to Mirage by causing the

20    applications for the Mirage Patents to be filed, thereby disclosing Mirage's Proprietary Information to

21    the PTO and, eventually, to the world. The filing of applications for the Mirage Patents destroyed

22    Mirage's ability to decide the best course of action to exploit its trade secrets and other proprietary

23    material. Each such act by each Defendant was willful, intentional, deliberate, and in bad faith.

24        101.    The Defendants' conduct was a substantial factor in causing harm to Mirage.

25        102.    Mirage was harmed by the Defendants' conduct in an amount to be proven at trial and

26    believed to be greater than the jurisdictional minimum of this court.

27        103.    Each Defendant was unjustly enriched by this conduct in an amount to be proven at

28    trial and believed to be greater than the jurisdictional minimum of this court.

MOUNT & STOELKER, P.C.
333 WEST SAN CARLOS
RIVERPARK TOWER, 17TH FLOOR
SAN JOSE, CALIFORNIA 95110-2726
TELEPHONE (408) 279-7000

Wherefore, Mirage prays for judgment against the Defendants as set forth below.

### SEVENTH CAUSE OF ACTION
### (INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE)
### (AGAINST SPEASL, ROBERTS, CHIKOSKY)

104. Plaintiff realleges and incorporates herein each and every prior allegation.

105. Mirage's trade secrets derive independent economic value from not being generally known to the public or to other persons who can obtain economic value from their disclosure or use. That economic value is realizable from the economic relationships Mirage has developed with its customers and potential customers, in such forms as licensing of intellectual property and sales of goods and services.

106. The Inventors were all employed in Mirage's C3I division, which was specifically charged with developing and exploiting Mirage's customer relationships, and each Inventor had actual knowledge of those relationships and the means by which Mirage sought to exploit them.

107. Defendants disrupted those relationships by such acts as breaching their Employment Agreements, converting Mirage's property, and misappropriating trade secrets for their own benefit. Although some of Defendants' actions also benefited PCC, the Inventors were, at that time, the sole owners of PCC. Each such act by each Defendant was willful, intentional, deliberate, and in bad faith.

108. The technologies embodied in the Mirage Patents were an excellent complement to Mirage's core technologies in reconnaissance and surveillance applications. For example, the capability to capture digital images in multiple formats is an obvious complement to Mirage's surveillance technology.

109. Mirage's relationships with its customers and potential customers contained the probability of future economic benefit to Mirage. Those relationships were disrupted when the Defendants' actions prevented Mirage from offering them new licenses, products, and services based on the trade secrets and technology relating to the Mirage Patents. The complementary nature of that material to Mirage's core technology makes it an obvious candidate for incorporation into Mirage's other products and services. The Defendants' filing of applications for the Mirage Patents destroyed

MOUNT & STOELKER, P.C.
333 WEST SAN CARLOS
RIVERPARK TOWER, 17TH FLOOR
SAN JOSE, CALIFORNIA 95110-2726
TELEPHONE (408) 279-7000

1  Mirage's ability to decide the best course of action to exploit its trade secrets and other proprietary

2  technology and severely hampered its ability to deliver new and innovative products and services to

3  its customers.

4      110.   Mirage's C3I division struggled for three years to develop new customer relationships,

5  licenses, products, and services.  Mirage terminated the C3I division and lost the probable economic

6  benefit of such relationships because the Defendants' conduct prevented it from exploiting licenses,

7  products, and services to meet those customers' needs.

8      111.   The Defendants' conduct was a substantial factor in causing harm to Mirage.

9      112.   Mirage was harmed by the Defendants' conduct in an amount to be proven at trial and

10  believed to be greater than the jurisdictional minimum of this court.

11      113.   Each Defendant was unjustly enriched by this conduct in an amount to be proven at

12  trial and believed to be greater than the jurisdictional minimum of this court.

    Wherefore, Mirage prays for judgment against the Defendants as set forth below.

13

14

15                          **EIGHTH CAUSE OF ACTION**
    **(NEGLIGENT INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE)**
16                  **(AGAINST SPEASL, ROBERTS, CHIKOSKY)**

17      114.   Plaintiff realleges and incorporates herein each and every prior allegation.

18      115.   As employees and officers of Mirage, the Defendants owed Mirage a duty of care.

19  Each Defendant owed Mirage a fiduciary duty, a duty of loyalty, and all other duties that an officer or

20  employee owes to an employer.

21      116.   Mirage's trade secrets derive independent economic value from not being generally

22  known to the public or to other persons who can obtain economic value from their disclosure or use.

23  That economic value is realizable from the economic relationships Mirage has developed with its

24  customers and potential customers, in such forms as licensing of intellectual property and sales of

25  goods and services.

26      117.   The Inventors were all employed in Mirage's C3I division, which was specifically

27  charged with developing and exploiting Mirage's customer relationships, and each Inventor had

28  actual knowledge of those relationships and the means by which Mirage sought to exploit them.

MOUNT & STOELKER, P.C.
333 WEST SAN CARLOS
RIVERPARK TOWER, 17TH FLOOR
SAN JOSE, CALIFORNIA 95110-2726
TELEPHONE (408) 279-7000

118.   Defendants disrupted those relationships by such acts as breaching their Employment Agreements, converting Mirage's property, and misappropriating trade secrets for their own benefit. Although some of Defendants' actions also benefited PCC, the Inventors were, at that time, the sole owners of PCC. Each such act by each Defendant was willful, intentional, deliberate, and in bad faith.

119.   The technologies embodied in the Mirage Patents were natural complements to Mirage's core technologies around the time the inventions were developed. For example, the capability to capture digital images in multiple formats is an obvious complement to Mirage's surveillance technology.

120.   Mirage's relationships with its customers and potential customers contained the probability of future economic benefit to Mirage. Those relationships were disrupted when the Defendants' actions prevented Mirage from offering them new licenses, products, and services based on the trade secrets and technology relating to the Mirage Patents. The complementary nature of that material to Mirage's core technology makes it an obvious candidate for incorporation into Mirage's other products and services. The Defendants' filing of applications for the Mirage Patents destroyed Mirage's ability to decide the best course of action to exploit its trade secrets and other proprietary technology and severely hampered its ability to deliver new and innovative products and services to its customers.

121.   Mirage's C3I division struggled for three years to develop new customer relationships, licenses, products, and services. Mirage terminated the C3I division and lost the probable economic benefit of such relationships because the Defendants' conduct prevented it from exploiting licenses, products, and services to meet those customers' needs.

122.   The Defendants' conduct was a substantial factor in causing harm to Mirage.

123.   Mirage was harmed by the Defendants' conduct in an amount to be proven at trial and believed to be greater than the jurisdictional minimum of this court.

124.   Each Defendant was unjustly enriched by this conduct in an amount to be proven at trial and believed to be greater than the jurisdictional minimum of this court.

Wherefore, Mirage prays for judgment against the Defendants as set forth below.

MOUNT & STOELKER, P.C.
333 WEST SAN CARLOS
RIVERPARK TOWER, 17TH FLOOR
SAN JOSE, CALIFORNIA 95110-2726
TELEPHONE (408) 279-7000

## NINTH CAUSE OF ACTION
## (INTENTIONAL MISREPRESENTATION)
## (AGAINST SPEASL, ROBERTS, CHIKOSKY)

125.    Plaintiff realleges and incorporates herein each and every prior allegation.

126.    Each Inventor entered into an Employment Agreement with Mirage when he became a Mirage employee.

127.    Each Employment Agreement contained express representations made by the employee to Mirage, relating to inventions.

128.    Roberts disclosed three inventions in his Employment Agreement which are not related to the subject matter of the Mirage Patents.  Speasl and Chikosky disclosed in their Employment Agreements that they had no inventions.  Thus, each Defendant affirmatively represented to Mirage that he had or knew of no inventions relating to the subject matter of the Mirage Patents.

129.    Each Employment Agreement afforded the employee an opportunity to disclose any rights that he wished to exclude from the terms of the Agreement which vest all rights in inventions and proprietary information in Mirage.  By failing to promptly disclose the subject matter of the Mirage Patents to Mirage, each Defendant, acting individually and in conspiracy with one another, represented to Mirage that the subject matter of the Mirage Patents did not exist.

130.    Each Defendant had actual knowledge of the falsity of this ongoing misrepresentation to Mirage.  Their actual knowledge of the inventions is proved by the filing of the applications for the Mirage Patents.  Each such false representation by each Defendant was willful, intentional, deliberate, and in bad faith.  Even if any Defendant lacked actual knowledge of the falsity of his ongoing misrepresentation, he acted recklessly with respect to the truth relating to his ongoing misrepresentation.

131.    Each Inventor intended to defraud Mirage and to induce Mirage's reliance on their individual and joint misrepresentations by actively concealing the existence of the subject matter of the Mirage Patents from Mirage.

132.    Mirage reasonably and justifiably relied on the Defendants' individual and joint misrepresentations because each Inventor was under an ongoing obligation to disclose such

MOUNT & STOELKER, P.C.
333 WEST SAN CARLOS
RIVERPARK TOWER, 17TH FLOOR
SAN JOSE, CALIFORNIA 95110-2726
TELEPHONE (408) 279-7000

1  information to Mirage under the terms of his Employment Agreement. Mirage has the right to expect

2  the undivided loyalty of its employees and to expect that others will obey the law.

3      133.  The Defendants' conduct was a substantial factor in causing harm to Mirage.

4      134.  Mirage was harmed by the Defendants' conduct in an amount to be proven at trial and

5  believed to be greater than the jurisdictional minimum of this court.

6      135.  Each Defendant was unjustly enriched by this conduct in an amount to be proven at

7  trial and believed to be greater than the jurisdictional minimum of this court.

8      Wherefore, Mirage prays for judgment against the Defendants as set forth below.

9

10  **TENTH CAUSE OF ACTION**
    **(NEGLIGENT MISREPRESENTATION)**
11  **(AGAINST SPEASL, ROBERTS, CHIKOSKY)**

12      136.  Plaintiff realleges and incorporates herein each and every prior allegation.

13      137.  Each Inventor entered into Employment Agreement with Mirage when he became a

14  Mirage employee.

15      138.  Each Defendant's Employment Agreement contained express representations made by

16  the employee to Mirage, relating to inventions.

17      139.  Roberts disclosed three inventions in his Employment Agreement which are not

18  related to the subject matter of the Mirage Patents. Speasl and Chikosky disclosed in their

19  Employment Agreements that they had no inventions. Thus, each Defendant affirmatively

20  represented to Mirage that he had or knew of no inventions relating to the subject matter of the

21  Mirage Patents.

22      140.  Each Employment Agreement invited the employee to disclose any rights that he

23  wished to exclude from the terms of the Agreement which vest all rights in inventions and proprietary

24  information in Mirage. By failing to promptly disclose the subject matter of the Mirage Patents to

25  Mirage, each Defendant, acting individually and in conspiracy with one another, represented to

26  Mirage that the subject matter of the Mirage Patents did not exist.

27      141.  None of the Inventors had any reasonable grounds for believing his ongoing

28  representations to Mirage were true because they devoted a substantial amount of time to developing

MOUNT & STOELKER, P.C.
333 WEST SAN CARLOS
RIVERPARK TOWER, 17TH FLOOR
SAN JOSE, CALIFORNIA 95110-2726
TELEPHONE (408) 279-7000

1  and reducing to practice the subject matter of the Mirage Patents and went to the substantial expense

2  of filing the applications for the Mirage Patents. The Defendants could not have devoted such time

3  and expense to such a project and not known of the project's existence.

4      142.    Each Inventor made negligent misrepresentations to Mirage and induced Mirage's

5  reliance on their individual and joint misrepresentations as to the existence of the Mirage Patents and

6  the subject matter thereof. Each such act by each Defendant was in negligent breach of their

7  obligations, deliberate, and in bad faith.

8      143.    Mirage reasonably and justifiably relied on the Defendants' individual and joint

9  misrepresentations because each Inventor was under an ongoing obligation to disclose such

10  information to Mirage under the terms of his Employment Agreement. Mirage has the right to expect

11  the undivided loyalty of its employees and to expect that others will obey the law.

12      144.    The Defendants' conduct was a substantial factor in causing harm to Mirage.

13      145.    Mirage was harmed by the Defendants' conduct in an amount to be proven at trial and

14  believed to be greater than the jurisdictional minimum of this court.

15      146.    Each Defendant was unjustly enriched by this conduct in an amount to be proven at

16  trial and believed to be greater than the jurisdictional minimum of this court.

17      Wherefore, Mirage prays for judgment against the Defendants as set forth below.

18

19                    **ELEVENTH CAUSE OF ACTION**
                        **(CONCEALMENT)**
20                  **(AGAINST SPEASL, ROBERTS, CHIKOSKY)**

21      147.    Plaintiff realleges and incorporates herein each and every prior allegation.

22      148.    Each Inventor was an employee of Mirage during the first portion of his active,

23  ongoing concealment of material information from Mirage and owed a duty of disclosure to Mirage.

24      149.    Each Defendant, acting individually and in conspiracy with one another, intentionally

25  failed to disclose the subject matter of the Mirage Patents to Mirage, and the Inventors actively

26  concealed such information from Mirage. Each such act by each Defendant was willful, intentional,

27  deliberate, and in bad faith.

28

MOUNT & STOELKER, P.C.
333 WEST SAN CARLOS
RIVER PARK TOWER, 17TH FLOOR
SAN JOSE, CALIFORNIA, 95110-2726
TELEPHONE (408) 279-7000

150.    Each Defendant, both individually and in conspiracy with one another, intended to deceive Mirage by concealing the subject matter of the Mirage Patents.

151.    Mirage reasonably and justifiably relied on the Defendants' individual and joint deceptions because each Inventor was under an ongoing obligation to disclose such information to Mirage under the terms of his Employment Agreement.  Mirage has the right to expect the undivided loyalty of its employees and to expect that others will obey the law.

152.    The Defendants' conduct was a substantial factor in causing harm to Mirage.

153.    Mirage was harmed by the Defendants' conduct in an amount to be proven at trial and believed to be greater than the jurisdictional minimum of this court.

154.    Each Defendant was unjustly enriched by this conduct in an amount to be proven at trial and believed to be greater than the jurisdictional minimum of this court.

Wherefore, Mirage prays for judgment against the Defendants as set forth below.

### TWELFTH CLAIM FOR RELIEF
### (SLANDER OF TITLE)
### (AGAINST ALL DEFENDANTS)

155.    Plaintiff realleges and incorporates herein each and every prior allegation.

156.    Mirage has always been the sole and exclusive owner of all right, title, and interest in the Mirage Patents and the subject matter thereof.

157.    Defendants have falsely published statements to third parties which disparage Mirage's right, title, and interest in the Mirage Patents and the subject matter thereof.  Such publications are not privileged and have been relied on by third parties to the detriment of Mirage.

158.    Each act of slandering Mirage's title in the Mirage Patents and the subject matter thereof by Defendants was willful, intentional, deliberate, and in bad faith.

159.    The Defendants' conduct was a substantial factor in causing harm to Mirage.

160.    Mirage was harmed by the Defendants' conduct in an amount to be proven at trial and believed to be greater than the jurisdictional minimum of this court.

161.    Each Defendant was unjustly enriched by this conduct in an amount to be proven at trial and believed to be greater than the jurisdictional minimum of this court.

MOUNT & STOELKER, P.C.
333 WEST SAN CARLOS
RIVERPARK TOWER, 17TH FLOOR
SAN JOSE, CALIFORNIA 95110-2726
TELEPHONE (408) 279-7000

Wherefore, Mirage prays for judgment against the Defendants as set forth below.

### THIRTEENTH CAUSE OF ACTION
### (UNFAIR COMPETITION)
### (AGAINST ALL DEFENDANTS)

162.   Plaintiff realleges and incorporates herein each and every prior allegation.

163.   Each Defendant, acting individually and in conspiracy with one another, has engaged in unfair competition under Cal. Bus. & Prof. Code § 17200, *et seq.*  Each Defendant has engaged in unlawful, unfair, and fraudulent business practices.

164.   Each Defendant, acting individually and in conspiracy with one another, has acted unlawfully by such acts as slandering Mirage's title to the Mirage Patents, violating the Uniform Trade Secrets Act, committing the tort of conversion, tortiously breaching duties to Mirage, intentionally and negligently interfering with Mirage's prospective economic advantage, intentionally and negligently misrepresenting facts to Mirage, concealing important and material information from Mirage, and wrongfully procuring unjust enrichment at Mirage's expense.  Each such act by each Defendant was willful, intentional, deliberate, and in bad faith.

165.   The Defendants' conduct was a substantial factor in causing harm to Mirage.

166.   Mirage was harmed by the Defendants' conduct in an amount to be proven at trial and believed to be greater than the jurisdictional minimum of this court.

167.   Each Defendant was unjustly enriched by this conduct in an amount to be proven at trial and believed to be greater than the jurisdictional minimum of this court.

Wherefore, Mirage prays for judgment against the Defendants as set forth below.

### FOURTEENTH CAUSE OF ACTION
### (UNJUST ENRICHMENT)
### (AGAINST ALL DEFENDANTS)

168.   Plaintiff realleges and incorporates herein each and every prior allegation.

169.   Each Defendant, acting individually and in conspiracy with one another, received benefits from its wrongful conduct and the wrongful conduct of the other Defendants.  By way of illustration, but not limitation, each Defendant received benefits from the filing of patent applications,

Mount & Stoelker, P.C.
333 West San Carlos
RiverPark Tower, 17th Floor
San Jose, California 95110-2726
Telephone (408) 279-7000

1   the issuance of patents, the formation and incorporation of PCC, the purported assignment of rights to

2   PCC, the purported assignment of rights to St. Clair, and the enforcement of the Mirage Patents in the

3   St. Clair Infringement Actions. Each Defendant has also received other benefits unknown to Mirage

4   at this time. Each such act by each Defendant was willful, intentional, deliberate, and in bad faith.

5        170.    Each Defendant, acting individually and in conspiracy with one another, wrongfully

6   and unjustly received and retained these benefits at the expense of Mirage.

7        171.    The Defendants' conduct was a substantial factor in causing harm to Mirage.

8        172.    Mirage was harmed by the Defendants' conduct in an amount to be proven at trial and

9   believed to be greater than the jurisdictional minimum of this court.

10       173.    Each Defendant was unjustly enriched by this conduct in an amount to be proven at

11  trial and believed to be greater than the jurisdictional minimum of this court.

12       Wherefore, Mirage prays for judgment against the Defendants as set forth below.

13

14            **FIFTEENTH CAUSE OF ACTION**
              **(DECLARATORY RELIEF)**
15            **(AGAINST ALL DEFENDANTS)**

16       174.    Plaintiff realleges and incorporates herein each and every prior allegation.

17       175.    An actual controversy has arisen and now exists between Mirage and the Defendants

18  concerning their respective rights and duties in that Mirage contends that it is, and always has been,

19  the legal and equitable owner of all right, title, and interest in the Mirage Patents and the subject

20  matter thereof, whereas the Defendants dispute Mirage's contentions and contend that the Defendants

21  are, or have been, owners of the Mirage Patents or the subject matter thereof.

22       176.    The Defendants' contentions of their ownership and other interests in the Mirage

23  Patents are explicit or implicit in their acts including, but not limited to, purporting to assign

24  ownership or other rights to the Mirage Patents; accepting purported assignments of ownership or

25  other rights to the Mirage Patents; asserting the Mirage Patents in the St. Clair Infringement Actions;

26  entering into contracts, licenses, and settlements pertaining to the Mirage Patents; and slandering

27  Mirage's title to the Mirage Patents.

28

MOUNT & STOELKER, P.C.
333 WEST SAN CARLOS
RIVERPARK TOWER, 17TH FLOOR
SAN JOSE, CALIFORNIA 95110-2726
TELEPHONE (408) 279-7000

177. Mirage desires a judicial determination of its rights and a declaration that it is, and always has been, the legal and equitable owner of all right, title, and interest in the Mirage Patents and the subject matter thereof.

178. The Defendants' conduct was a substantial factor in causing harm to Mirage.

179. Mirage was harmed by the Defendants' conduct in an amount to be proven at trial and believed to be greater than the jurisdictional minimum of this court.

180. Each Defendant was unjustly enriched by this conduct in an amount to be proven at trial and believed to be greater than the jurisdictional minimum of this court.

181. A judicial determination and declaration is necessary and appropriate at this time under the circumstances in order that Mirage may ascertain its rights. Without a judicial determination and declaration, the Defendants and third parties will perceive a cloud over Mirage's right, title, and interest in the Mirage Patents and the subject matter thereof, and Mirage will be harmed by a diminished ability to commercialize the Mirage Patents.

Wherefore, Mirage prays for judgment against the Defendants as set forth below.

## SIXTEENTH CAUSE OF ACTION
### (CONSPIRACY)
### (AGAINST ALL DEFENDANTS)

182. Plaintiff realleges and incorporates herein each and every prior allegation.

183. At all times relevant hereto, the Defendants acted in conspiracy with one another.

184. Each Defendant had actual knowledge of the other Defendants' intention to act wrongfully and unlawfully. Each such act by each Defendant was willful, intentional, deliberate, and in bad faith.

185. Each Defendant agreed with the other Defendants and intended that those wrongful and unlawful acts be committed. Each such act of agreement by each Defendant was willful, intentional, deliberate, and in bad faith.

186. The Defendants acted overtly in furtherance of their conspiracy by, for example, the following acts: assisting in the development of the subject matter of the Mirage Patents, failing to disclose the subject matter of the Mirage Patents to Mirage, cooperating in the filing of applications

MOUNT & STOELKER, P.C.
333 WEST SAN CARLOS
RIVERPARK TOWER, 17TH FLOOR
SAN JOSE, CALIFORNIA 95110-2725
TELEPHONE (408) 279-7000

for the Mirage Patents and the prosecution of those applications to fruition, cooperating in the formation and incorporation of PCC, cooperating in the purported assignment of rights to PCC, assisting PCC in attempts to exploit the Mirage Patents, cooperating in the purported assignment of rights to St. Clair, cooperating in the enforcement of the Mirage Patents, slandering Mirage's title to the Mirage Patents, and receiving and accepting benefits from each of those acts and the acts of the other Defendants. Each such act by each Defendant was willful, intentional, deliberate, and in bad faith.

187.    The Defendants' conduct was a substantial factor in causing harm to Mirage.

188.    Mirage was harmed by the Defendants' conduct in an amount to be proven at trial and believed to be greater than the jurisdictional minimum of this court.

189.    Each Defendant was unjustly enriched by this conduct in an amount to be proven at trial and believed to be greater than the jurisdictional minimum of this court.

Wherefore, Mirage prays for judgment against the Defendants as set forth below.

## PRAYER FOR RELIEF

Wherefore, Mirage prays for judgment against each Defendant and for the relief set forth below:

1.    For damages, according to proof at the time of trial;

2.    For a declaration that Mirage is, and always has been, the legal and equitable owner of all right, title, and interest in the Mirage Patents and the subject matter thereof;

3.    For establishment of a constructive trust such that each Defendant holds its entire right, title, and interest in the Mirage Patents and the subject matter thereof in trust for the benefit of Mirage;

4.    For specific performance of each Inventor's Employment Agreement such that each Inventor must immediately transfer his entire right, title, and interest in the Mirage Patents and the subject matter thereof to Mirage;

5.    For an injunction such that each Defendant is ordered to assign its entire right, title, and interest in the Mirage Patents and the subject matter thereof to Mirage;

MOUNT & STOELKER, P.C.
333 WEST SAN CARLOS
RIVERPARK TOWER, 17TH FLOOR
SAN JOSE, CALIFORNIA, 95110-2726
TELEPHONE (408) 279-7000

6.    For an injunction such that each Defendant is prohibited from disparaging Mirage's right, title, and interest in the Mirage Patents and the subject matter thereof or otherwise slandering Mirage's title;

7.    For an injunction such that each Defendant is ordered to inform Mirage in writing within 30 days of the identity all persons and entities to which it has disparaged Mirage's right, title, and interest in the Mirage Patents or the subject matter thereof;

8.    For restitution, according to proof at the time of trial;

9.    For disgorgement of profits, according to proof at the time of trial;

10.    For exemplary and punitive damages;

11.    For reasonable attorneys' fees according to proof;

12.    For costs of suit herein incurred; and

13.    For such other and further relief as the Court may deem just and proper.


Dated: April 12, 2005                          Mount & Stoelker, P.C.


                                               By:
                                               Daniel S. Mount, Esq.
                                               Justin T. Beck, Esq.
                                               Ron Finley, Esq.
                                               Attorneys for Plaintiff Mirage Systems, Inc.

MOUNT & STOELKER, P.C.
333 WEST SAN CARLOS
RIVERPARK TOWER, 17TH FLOOR
SAN JOSE, CALIFORNIA 95110-2726
TELEPHONE (408) 279-7000

B

1   KENNETH L. NISSLY (SB# 77589)
    SUSAN van KEULEN (SB# 136060)
2   RICHARD S. SWOPE (SB# 233200)
    THELEN REID & PRIEST LLP
3   225 West Santa Clara Street, Suite 1200
    San Jose, CA 95113-1723
4   Tel. 408.292.5800
    Fax 408.287.8040
5
6   Attorneys for ST. CLAIR INTELLECTUAL
    PROPERTY CONSULTANTS, INC.
7
8
9               SUPERIOR COURT OF THE STATE OF CALIFORNIA
10                          COUNTY OF SANTA CLARA
11
12
    MIRAGE SYSTEMS, INC.,                Case No.: 1-05-CV-039164
13
                    Plaintiff,            DEMURRER BY DEFENDANT ST.
14                                        CLAIR INTELLECTUAL PROPERTY
         vs.                              CONSULTANTS, INC. TO COMPLAINT
15
    JERRY SPEASL, an individual; MARK K.  Date:      June 28, 2005
16  ROBERTS, an individual; and MATTHEW   Time:      9:00 a.m.
    CHIKOSKY, an individual ST. CLAIR     Judge:     Jamie Jacobs-May
17  INTELLECTUAL PROPERTY                 Dept.      4
    CONSULTANTS, INC., a Michigan
18  corporation; and JOHN DOES 1-50,      Date Action filed:   April 12, 2005
    inclusive,                            Date Set for Trial:  Unkown
19
                    Defendants.
20
21        Pursuant to California Code of Civil Procedure §§ 430.10(e) and 430.30, Defendant St.
22  Clair Intellectual Property Consultants, Inc., hereby demurs to Plaintiff Mirage System, Inc.'s
23  Complaint on the following grounds:
24        1.    Defendant demurs to the third cause of action of the Complaint on the ground that
25  it fails to state facts sufficient to constitute a cause of action for conversion in that it shows on its
26  face that the cause of action is barred by the statute of limitations under California Code of Civil
27  Procedure §§ 338(c), 343. California Code of Civil Procedure §§ 430.10(e).
28

THELEN REID        SV #207245 v1                    -1-
& PRIEST LLP       _____
ATTORNEYS AT LAW        DEMURRER BY DEFENDANT ST. CLAIR INTELLECTUAL PROPERTY
                              CONSULTANTS, INC. TO COMPLAINT

1    2.    Defendant demurs to the third cause of action of the Complaint on the ground that

2  it fails to state facts sufficient to constitute a cause of action for conversion in that it does not

3  allege the date of conversion.  California Code of Civil Procedure §§ 430.10(e).

4    3.    Defendant demurs to the twelfth cause of action of the Complaint on the ground

5  that it fails to state facts sufficient to constitute a cause of action for slander of title in that it shows

6  on its face that the cause of action is barred by the statute of limitations under California Code of

7  Civil Procedure §§ 338(g), 343.  California Code of Civil Procedure §§ 430.10(e).

8    4.    Defendant demurs to the twelfth cause of action of the Complaint on the ground

9  that it fails to state facts sufficient to constitute a cause of action for slander of title in that it does

10  not allege that defendants acted with malice.  California Code of Civil Procedure §§ 430.10(e).

11    5.    Defendant demurs to the thirteenth cause of action of the Complaint on the ground

12  that it fails to state facts sufficient to constitute a cause of action for unfair competition in that it

13  shows on its face that the cause of action is barred by the statute of limitations under California

14  Code of Civil Procedure §§ 338(c), 338(g), 343.  California Code of Civil Procedure §§ 430.10(e).

15    6.    Defendant demurs to the fourteenth cause of action of the Complaint on the ground

16  that it fails to state facts sufficient to constitute a cause of action for unjust enrichment in that it

17  shows on its face that the cause of action is barred by the statute of limitations under California

18  Code of Civil Procedure §§ 338(c), 343.  California Code of Civil Procedure §§ 430.10(e).

19    7.    Defendant demurs to the fifteenth cause of action of the Complaint on the ground

20  that it fails to state facts sufficient to constitute a cause of action for declaratory relief in that it

21  shows on its face that the cause of action is barred by the statute of limitations under California

22  Code of Civil Procedure §§ 338(c), 343.  California Code of Civil Procedure §§ 430.10(e).

23    8.    Defendant demurs to the sixteenth cause of action of the Complaint on the ground

24  that it fails to state facts sufficient to constitute a cause of action for conspiracy in that it shows on

25

26

27

28

THELEN REID
& PRIEST LLP
ATTORNEYS AT LAW

SV #207245 v1

-2-

**DEMURRER BY DEFENDANT ST. CLAIR INTELLECTUAL PROPERTY
CONSULTANTS, INC. TO COMPLAINT**

1    its face that the cause of action is barred by the statute of limitations under California Code of

2    Civil Procedure §§ 338(c), 338(d), 343.  California Code of Civil Procedure §§ 430.10(e).

3        9.    Defendant demurs to all causes of action alleged against St. Clair on the grounds

4    that they are barred by laches.

5

6

7    Dated: May 12, 2005

8                                         THELEN REID & PRIEST LLP

9

10                          By _____

11                              KENNETH L. NISSLY
                                SUSAN van KEULEN
                                RICHARD S. SWOPE
12                              Attorneys for Defendant
                                ST. CLAIR INTELLECTUAL
13                                PROPERTY CONSULTANTS, INC.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

THELEN REID
& PRIEST LLP
ATTORNEYS AT LAW

SV #207245 v1                          -3-

**DEMURRER BY DEFENDANT ST. CLAIR INTELLECTUAL PROPERTY**
**CONSULTANTS, INC.  TO COMPLAINT**