C

CM-020

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): | FOR COURT USE ONLY |
|---|---|

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address):
Bobby T. Shih (SBN 210957)
Mount & Stoelker, P.C.
333 W. San Carlos Street, 17th Floor, San Jose CA  95110

TELEPHONE NO.: (408) 297-7000    FAX NO. (Optional): (408) 998-1473
E-MAIL ADDRESS (Optional): bshih@mount.com
ATTORNEY FOR (Name): Plaintiff MIRAGE SYSTEMS, INC.

*FOR COURT USE ONLY*

ENDORSED

2005 JUN 10  AM 11: 53

KIRI TORRE, CEO
SUPERIOR COURT OF CA.
CO. OF SANTA CLARA
BY_____ DEPUTY
A. GALVAN

SUPERIOR COURT OF CALIFORNIA, COUNTY OF  SANTA CLARA
STREET ADDRESS: 191 N. First Street
MAILING ADDRESS:
CITY AND ZIP CODE: San Jose CA  95113
BRANCH NAME:

PLAINTIFF/PETITIONER: MIRAGE SYSTEMS, INC.

DEFENDANT/RESPONDENT: Jerry SPEASL, Mark K. ROBERTS, et al.

| EX PARTE APPLICATION FOR EXTENSION OF TIME TO SERVE PLEADING  AND ☑ ORDER EXTENDING TIME TO SERVE AND ☐ ORDER CONTINUING CASE MANAGEMENT CONFERENCE | CASE NUMBER: 1-05-CV-~~031964~~ JJM  039164 |
|---|---|

## APPLICATION

| | HEARING DATE: | |
|---|---|---|
| | DEPT.: | TIME: |

1. Applicant (name):
   is
   a. ☑ plaintiff
   b. ☐ cross-complainant
   c. ☐ petitioner
   d. ☐ defendant
   e. ☐ cross-defendant
   f. ☐ respondent
   g. ☐ other (describe):

2. The complaint or other initial pleading in this action was filed on (date): April 12, 2005

3. Applicant requests that the court grant an order extending time for service of the following pleading:
   a. ☑ Complaint
   b. ☐ Cross-complaint
   c. ☐ Petition
   d. ☐ Answer or other responsive pleading
   e. ☐ Other (describe):

4. Service and filing of the pleading listed in item 3 is presently required to be completed by (date):  June 13, 2005

5. Previous applications, orders, or stipulations for an extension of time to serve and file in this action are:
   a. ☑ None
   b. ☐ The following (describe all, including the length of any previous extensions):

6. Applicant requests an extension of time to serve and file the pleading listed in item 3 on the following parties (name each):
   Mark K. Roberts

Form Approved for Optional Use
Judicial Council of California
CM-020 [Rev. July 1, 2004]

**EX PARTE APPLICATION FOR EXTENSION OF TIME
TO SERVE PLEADING AND ORDERS**

Page 1 of 2
Cal. Rules of Court,
rules 201.7 and 379

American LegalNet, Inc.
www.USCourtForms.com

| CASE NAME: | CASE NUMBER: 039164 |
|---|---|
| MIRAGE SYSTEMS, INC. v. SPEASL, et al. | 1-05-CV-031964 JJM |

7. The pleading has not yet been filed and served on the parties listed in Item 6 for the following reasons (describe the efforts that have been made to serve the pleading and why service has not been completed):

☑ Continued on Attachment 7.

8. An extension of time to serve and file the pleading should be granted for the following reasons:

☑ Continued on Attachment 8.

9. If an extension of time is granted, filing and service on the parties listed in Item 6 will be completed by (date): August 12, 2005

10. Notice of this application under rule 379 ☑ has been provided as required (describe all parties or counsel to whom notice was given; the date, time, and manner of giving notice; what the parties or counsel were told and their responses; and whether opposition is expected) or ☐ is not required (state reasons):

☑ Continued on Attachment 10.

11. Number of pages attached: _7_

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: June 9, 2005

_____
Bobby T. Shih
(TYPE OR PRINT NAME OF APPLICANT OR ATTORNEY FOR APPLICANT)

▶  _____
(SIGNATURE OF APPLICANT OR ATTORNEY FOR APPLICANT)

**Order on Application is** ☐ **below** ☐ **on a separate document.**

## ORDER

1. The application for an order extending time to serve and file the pleading is ☑ granted ☐ denied.

2. The pleading must be served and filed no later than (date): *August 18, 2005*

3. ☑ The case management conference is rescheduled to:
   a. Date:  *9-20-05*
   b. Time:  *10:00 Am*
   c. Place:  *Dept. 4*

4. Other orders:

5. A copy of this application and order must be served on all parties or their counsel that have appeared in the case.

Date:  **JUN 10 2005**

_____
Jamie Jacobs-May
JUDICIAL OFFICER

CM-020 [Rev. July 1, 2004]

**EX PARTE APPLICATION FOR EXTENSION OF TIME
TO SERVE PLEADING AND ORDERS**

**MIRAGE SYSTEMS, INC. v. Jerry SPEASL, Mark K. ROBERTS, et al.**
**Santa Clara County Superior Court Case No. 1-05-CV-031964 JJM**
039164

## ATTACHMENT 7

Plaintiff engaged the services of Attorneys' Services Unlimited, Inc., a registered process service, in April 2005 to serve the complaint on Mark K. Roberts. Plaintiff provided the process server with an address in St. Louis, Missouri, believed to be Mr. Roberts's residence. Several attempts to serve Mr. Roberts at the Missouri residence were unsuccessful. Based on information provided by a tenant there, the process server discovered Mr. Roberts owned the building, but may reside in California. Subsequently, Plaintiff discovered Mr. Roberts may currently be residing at an address in Henderson, Nevada. On five different occasions, the process server attempted to serve Mr. Roberts at the Nevada residence. Since April 2005, the process server has not been able to serve Mr. Roberts, despite numerous attempts. As support for Plaintiff's efforts to serve Mr. Roberts, Plaintiff submits Declaration of Diane Raithel attached as Exhibit A and Declaration of Diligence attached as Exhibit B.

MIRAGE SYSTEMS, INC. v. Jerry SPEASL, Mark K. ROBERTS, et al.
Santa Clara County Superior Court Case No. 1-05-CV-~~031964~~ JJM

039164

## ATTACHMENT 8

Under Gov. C. § 68616(a), a longer period of time for service of the complaint shall be "granted on a showing that service could not reasonably be achieved within the time required with the exercise of due diligence consistent with the amount in controversy." Because Plaintiff exercised due diligence within the time required in attempting to serve the complaint on Mr. Roberts, as explained above and as shown by the accompanying declarations, Plaintiff's request for an extension of time to serve the complaint on Defendant Mark K. Roberts of sixty (60) days should be granted.

**MIRAGE SYSTEMS, INC. v. Jerry SPEASL, Mark K. ROBERTS, et al.**
**Santa Clara County Superior Court Case No. 1-05-CV-~~031964~~ JJM**

039164

## ATTACHMENT 10

Proper notice sent by letters faxed on June 8, 2005, at 3:30 p.m., to counsel for Defendants: Kenneth L. Nissly of Thelen Reid & Priest LLP, attorney for St. Clair Intellectual Property Consultants, Inc.; Lani R. Miller of O'Melveny & Myers LLP, attorney for Jerry Speasl; and Bruce C. Piontkowski of Ropers Majeski Kohn & Bentley, attorney for Matthew Chikosky. These lawyers represent all parties who have filed appearances. The letters informed counsel that Plaintiff intends to make an *ex parte* application at 8:15 a.m., on Friday, June 10, 2005, at the Superior Court in San Jose, California, and that the basis of the application is to request the Court to prepare an appropriate order to extend the deadline to serve the complaint and its associated documents on Mark K. Roberts. The letters asked counsel if they will appear at the *ex parte* hearing, and if they will oppose it. Both Mr. Piontkowski and Mr. Nissly informed our office that they would neither appear for nor oppose Plaintiff's *ex parte* application. Ms. Miller informed our office that a representative from her firm may appear, but reserved objection pending review of the *ex parte* application.

1   Daniel S. Mount, Esq. (State Bar No. 77517)
2   Justin T. Beck, Esq. (State Bar No. 53138)
    Ron C. Finley, Esq. (State Bar No. 200549)
3   Mount & Stoelker, P.C.
    333 West San Carlos
4   RiverPark Tower, 17th Floor
    San Jose CA  95110-2726
5   Phone: (408) 279-7000
    Fax:    (408) 998-1473
6

7   Attorneys for Plaintiff Mirage Systems, Inc.

8                   SUPERIOR COURT OF THE STATE OF CALIFORNIA
                            COUNTY OF SANTA CLARA
9

10  MIRAGE SYSTEMS, INC.,                    ) CASE NO. 1-05-CV-~~03164~~ 039164

11              Plaintiff,                    )

12  vs.                                       ) **DECLARATION OF DIANE RAITHEL IN**
                                              ) **SUPPORT OF PLAINTIFF'S EX PARTE**
13  JERRY SPEASL, an individual; MARK K.      ) **APPLICATION FOR ORDER TO EXTEND**
    ROBERTS, an individual; and MATTHEW       ) **TIME TO SERVE COMPLAINT ON**
14  CHIKOSKY, an individual; ST. CLAIR        ) **DEFENDANT MARK K. ROBERTS**
    INTELLECTUAL PROPERTY                     )
15  CONSULTANTS, INC., a Michigan             ) Date:  June 10, 2005
    corporation; and JOHN DOES 1–50,          ) Time:  8:15 a.m.
16  inclusive                                 ) Dept.: TBA
                                              )
17                                            )
                Defendants.                   )
18                                            )

19

20

21

22

23

24

25

26

27

28

---

Raithel Declaration re Ex Parte Application for Order Extending Time to Serve Complaint on Roberts

I, DIANE RAITHEL, declare as follows:

1.     I am employed by the law firm of Mount & Stoelker, P.C. I have personal knowledge of the facts set forth herein and if called to testify as a witness in this matter, I could and would competently testify to these facts under oath.

2.     In April 2005, our office engaged the services of Attorneys' Services Unlimited, Inc., a registered California process server, to serve the complaint and its associated documents on Defendant Mark K. Roberts ("Roberts").

3.     Based on research into online databases and directories, our office determined that Roberts may be residing at 2836 Lemp Avenue, St. Louis, Missouri. I passed this information onto the process server.

4.     In April 2005, the process server informed our office that five attempts were made to locate and serve Roberts at the Missouri residence. The process server informed us that a tenant at that address stated that Roberts owned the building, but did not reside at that address, though he believed Roberts resided in California. The tenant did not provide a forwarding address. The process server also told us that, without additional information, he would be unable to locate and serve Roberts.

5.     Subsequently, based on further inquiry, our office discovered that Roberts may currently be residing at 497 Cape Alan Drive, Henderson, Nevada. I passed this information onto the process server.

6.     In June 2005, the process server informed our office that attempts to serve Roberts were made on five different occasions at the Nevada residence. The process server stated that a person apparently was present at that residence, but did not answer nor come to the door, and appeared to be avoiding service.

MOUNT & STOELKER, P.C.
333 WEST SAN CARLOS
RIVERPARK TOWER, 17TH FLOOR
SAN JOSE, CALIFORNIA 95110-2726
TELEPHONE (408) 279-7000

7.    I requested the process server to document his efforts in attempting to serve Roberts at the Nevada residence.  Enclosed is a true and correct copy of the document prepared by the process server entitled "Declaration of Diligence" as Exhibit B.

8.    To date, despite diligent efforts, the process server has been unable to personally serve Roberts.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.  Executed on June 9, 2005 at San Jose, California.

_Diane Raithel_

Diane Raithel

MOUNT & STOELKER, P.C.
333 WEST SAN CARLOS
RIVERPARK TOWER, 17TH FLOOR
SAN JOSE, CALIFORNIA 95110-2726
TELEPHONE (408) 279-7000

Raithel Declaration re Ex Parte Application for Order Extending Time to Serve Complaint on Roberts
Page 2

06/08/2005  13:59  4082939558                    ASU INC                              PAGE  02

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name and Address)*: | TELEPHONE NO.: | FOR COURT USE ONLY |
|---|---|---|
| MOUNT & STOELKER,<br>ATTORNEYS AT LAW<br>333 W. SAN CARLOS #1700<br>SAN JOSE, CA 95110-2711 | (408) 279-7000 | |

| ATTORNEY FOR *(Name)*: MIRAGE SYSTEMS, INC. | Ref. No. or File No. | MIRAG002<br>00077666-06 |
|---|---|---|

Insert name of court, judicial district or branch court, if any:
SUPERIOR COURT OF CALIFORNIA,
SANTA CLARA COUNTY, CIVIL DIVISION
191 NORTH FIRST STREET
SAN JOSE, CA 95113

PLAINTIFF:
MIRAGE SYSTEMS, INC.

DEFENDANT:
ST. CLAIR INTELLECTUAL

| DECLARATION OF<br>DILIGENCE | DATE: | TIME: | DEPT/DIV: | CASE NUMBER:<br>105CV039164 |
|---|---|---|---|---|

I received the within process on June 3, 2005 and that after due and diligent effort I have been unable to personally serve said party. The following itemization of the dates and times of attempts details the efforts required to effect personal service. Additional costs for diligence are recoverable under CCP 1033.5 (a)(4)(B).

    PARTY SERVED: MARC K. ROBERTS

    HOME: 497 CAPE ALAN DRIVE
          HENDERSON, NV 89052

As enumerated below:
06/03/05 08:00 pm    NO ANSWER AT RESIDENCE ADDRESS PER PHYSICAL ATTEMPT.
06/05/05 07:55 pm    NO ANSWER AT RESIDENCE ADDRESS PER PHYSICAL ATTEMPT.
06/06/05 09:55 pm    NO ANSWER AT RESIDENCE ADDRESS PER PHYSICAL ATTEMPT. LIGHTS ON, DOG
                     BARKING INSIDE. DOG WAS MOVED TO ANOTHER ROOM AND STOPPED BARKING.
                     PROCESS SERVER THINK SUBJECT WAS INSIDE.
06/07/05 10:15 pm    NO ANSWER AT RESIDENCE ADDRESS PER PHYSICAL ATTEMPT.
06/08/05 02:00 pm    SUBJECT SEEMS TO AVOIDING SERVICE, DOES NOT ANSWER OR COME TO THE DOOR.
06/08/05 02:00 pm    DO YOU HAVE ANY ADDITIONAL INFORMATION THAT WILL HELP IN SERVING SUBJECT?

*Employee of registered process server.*
County: Santa Clara
Registration No.: 004
Expiration: 03/16/2007
ATTORNEYS' SERVICES UNLTD. INC.
P. O. BOX 391
SAN JOSE, CA 95103-0391
(408) 293-9558

I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed on June 8, 2005 at San Jose, California.

Signature: _____
            BRADLEY JOHN CASADOS

**EXHIBIT B**

00077666-06/02

D

Westlaw.

Not Reported in F.Supp.2d                                                   Page 1

Not Reported in F.Supp.2d, 2004 WL 51269
**(Cite as: Not Reported in F.Supp.2d)**

**H**
Not Reported in F.Supp.2d, 2004 WL 51269
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court,D. Delaware.
UNITED STATES AIRCRAFT INSURANCE
GROUP, Plaintiff,
v.
DWIGGINS, L.L.C. and Bombardier Capital, Inc.,
Defendants.
**No. Civ. 03-173-SLR.**

Jan. 5, 2004.

MEMORANDUM ORDER

ROBINSON, J.

I. INTRODUCTION

*1 United States Aircraft Insurance Group ("USAIG
") filed this action for declaratory judgment on
February 5, 2003, against defendants Dwiggins,
LLC ("Dwiggins") and Bombardier Capital, Inc. ("
BCI"), seeking declaratory relief that an insurance
policy issued to Dwiggins is void *ab initio* and
unenforceable due to material misrepresentations
made during the underwriting process and due to
Dwiggins' failure to comply with policy conditions.
(D.I.1) Presently before the court is the motion of
defendant Dwiggins to dismiss or in the alternative
to stay the proceedings. (D.I.42) Because the court
concludes that abstention is not warranted and that
all necessary parties are before the court, Dwiggins'
motion will be denied.

II. BACKGROUND

A. Facts as Alleged by USAIG

The facts in the present case were outlined by the
court in its October 15, 2003 memorandum opinion
granting partial summary judgment to BCI. (D.I.59)
To briefly summarize, Dwiggins obtained general
liability and hull risk insurance for a Lear 60 jet
through USAIG for a policy period beginning on
September 10, 2002, and ending on September 10,
2003. The aircraft was financed through an
agreement with BCI, which is insured as a
lender/lessor under the insurance policy. The
insurance policy was procured with the assistance of
Palmer & Cay and the Heath Lambert Group.

On October 7, 2002, the aircraft, on its inaugural
flight, crashed while landing at the Santa Cruz
Airport, State of Rio do Sul, SSSC, Brazil. On
board the aircraft were Luiz A.D. Ferreira, Jose
Maria Gelsi, Robert Luiz Catao Martinesz, Julio
Sergio Soares Barbosa, and Telmos Goes. Barbosa
was killed in the incident, and the other passengers
sustained serious injuries.

B. USAIG Claims and Procedural History

USAIG filed the present action on February 5,
2003, and asserting the following claims for relief:
(1) rescission of the policy as to both defendants
alleging that Dwiggins and Bombardier made
material misrepresentations during the underwriting
process; (2) an order of invalidity as to each
defendant on the basis of negligent
misrepresentation during the underwriting process;
and (3) declaratory judgment against defendant
Dwiggins alleging that Dwiggins failed to comply
with a condition precedent to coverage. (D .I. 1)
BCI has counterclaimed for enforcement of its
rights under the lender/lessor endorsement. (D.I.5)

Service on Dwiggins was effected on June 3, 2003.
(D.I.16) On August 15, 2003, Dwiggins, in its first
response to USAIG's complaint, filed the present
motion to dismiss or, in the alternative, to stay the
proceedings. (D.I.42) On October 15, 2003, this
court granted partial summary judgment to

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2004 WL 51269
**(Cite as: Not Reported in F.Supp.2d)**

defendant BCI as to count one, except to the extent that Palmer & Cay may have been acting as an agent of BCI, and granted summary judgment to BCI with respect to count two. (D.I.59, 60)

### C. Florida Litigation

On February 25, 2003, Dwiggins, American Virginia Tabacaos, Industrisa e Comercio, Importacaco e Exportacao de Tabacos Ltda (" American Virginia"), filed a complaint for declaratory relief and damages in and for Broward County, Florida. FN1 Named as defendants in that case were United States Aviation Underwriters, Inc. ("USAU"), individually and as manager of USAIG, Palmer & Cay of Florida, LLC ( "Palmer & Cay"), and BCI. Service was effected on USAIG on May 5, 2003. (D.I.52, ex. B) Dwiggins's Florida complaint seeks the following: (1) declaratory relief against USAU as to the insurance policy's enforceability; (2) damages for breach of contract against USAU; (3) damages for negligence in the procurement of insurance against Palmer & Cay; (4) damages for negligent misrepresentation against BCI on the grounds that Dwiggins hired Telmos Goes as the pilot based on BCI's recommendations; FN2 (5) damages for negligence against BCI with respect to Goes. Dwiggins and American Virginia's counsel in that case is also Steven C. Marks, who entered an appearance in this court on behalf of Dwiggins.

> FN1. Dwiggins is a subsidiary of American Virginia formed for the purpose of purchasing the aircraft at issue.

> FN2. BCI has subsequently been dismissed from the Florida action on Dwiggins' motion for lack of joinder.

**\*2** On March 17, 2003, the passengers on board the aircraft when it crashed ("the Florida Claimants") filed personal injury actions in the Circuit Court of Dade County, Florida against Dwiggins and American Virginia. Counsel to each of the Florida Claimants in each of the four cases is also Steven C. Marks. The Florida Claimants each have a

relationship with American Virginia. Luiz A.D. Ferreira is the President and Principal of American Virginia. Jose Maria Gelsi is corporate counsel to American Virginia. Roberto Catao Martinez was an employee of American Virginia. Julio Sergio Soares Borbosa was also an employee of American Virginia.

Within two weeks of the filing of suits by the Florida Claimants, settlement agreements and assignments were entered into, in which Dwiggins assigned any rights against USAIG to the Florida Claimants, and final judgments were entered in the Dade County actions in favor of the Florida Claimants and against Dwiggins totaling $30 million. FN3

> FN3. USAIG alleges that it was not a party to the Dade County cases, was never given notice of their commencement, and had no knowledge of the pendency of the suits before they were settled. (D.I. 51 at 4)

Following the settlement with Dwiggins, the Florida Claimants filed four suits against USAIG and Palmer Cay in Broward County, Florida, on May 14, 2003. The suits allege a count of breach of contract against USAIG and a negligence claim against Palmer & Cay. The attorney for the Florida Claimants in these judgment creditor cases is Steven Marks, attorney for defendant Dwiggins in the present case.

### III. STATEMENT OF LAW

### A. Abstention Doctrine

It is well established that federal courts have a strict duty to exercise the jurisdiction that is conferred upon them. *See Quackenbush v. Allstate Ins. Co.,* 517 U.S. 706, 716 (1996). That duty, however, is not absolute and where there are parallel proceedings in a state court, federal courts have substantial discretion to decline to hear the case in certain circumstances where equitable considerations, judicial economy, and principles of

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                            Page 3

Not Reported in F.Supp.2d, 2004 WL 51269
(Cite as: Not Reported in F.Supp.2d)

federalism warrant. FN4 *Id.* The Supreme Court has continually construed the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 -02, as an enabling act that grants discretion to the courts to entertain a case, rather than an absolute right to the litigants. *See Wilton v. Seven Falls Co.,* 515 U.S. 277, 286-87 (1995). Consequently, abstention may be warranted where a plaintiff has brought suit under § 2201, predicated under the court's subject matter jurisdiction, and a substantially similar proceeding is brought in state court. *See Brillhart v. Excess Ins. Co. of America,* 316 U.S. 491 (1942).

> FN4. The first basis for federal abstention are those cases in which a constitutional issue may be mooted by a state court determination of state law issues. *Railroad Comm'n v. Pullman Co.,* 312 U.S. 496 (1941). A second basis for federal abstention involves those cases where a federal court's review of difficult issues of state law would be disruptive to the state's efforts to establish coherent public policy. *Burford v. Sun Oil Co.,* 319 U.S. 315 (1943). A third basis for federal abstention exists where federal jurisdiction is invoked for the purpose of restraining state criminal proceedings and in which there are claims of bad faith, harassment, or a patently invalid state statute. *Younger v. Harris,* 401 U.S. 37 (1971).

At the center of the court's inquiry is whether " questions in controversy between the parties to the federal suit, and which are not foreclosed under the applicable substantive law, can better be settled in the proceeding pending in the state court." *Brillhart,* 316 U.S. at 495; *Wilton,* 515 at 282. The Third Circuit has indicated that discretion is properly exercised where there are novel or unsettled issues of state law and where declining to hear the case would avoid duplicative and piecemeal litigation. *See State Auto Ins. Co. v. Summy,* 234 F.3d 131, 134-35 (3d. Cir.2001). Further, the Third Circuit has specifically noted that "the desire of insurance companies and their insureds to receive declarations in federal court on matters of purely state law has no special call on the federal forum." FN5 *Id.* at

136.

> FN5. The Third Circuit suggests three relevant considerations pertaining to a district court's exercise of discretion with respect to declaratory judgment actions involving insurance coverage issues:
> 1. A general policy of restraint when the same issues are pending in a state court;
> 2. An inherent conflict of interest between an insurer's duty to defend in a state court and its attempt to characterize that suit in federal court as falling within the scope of a policy exclusion;
> 3. Avoidance of duplicative litigation.
> *Id.* at 134 (quoting *United States v. Commonwealth of Pennsylvania, Dept. of Environmental Resources,* 923 F.2d 1071, 1075-76 (3d Cir.1991)).

B. Joinder of Necessary and Indispensable Parties

**\*3** Rule 12(b)(7) provides for the dismissal of a claim where the plaintiff has failed to join an indispensable party. Fed.R.Civ.P. 12(b)(7). A court, in evaluating such a motion, applies the two-part test found in Fed.R.Civ.P. 19. The first part of this test asks whether the absent party is necessary for adjudication of the issue. The second part of the test is equitable in nature, and is directed to whether a necessary party is indispensable to a fair resolution of the issues. *Id.*

Rule 19(a) provides that an absent person is a necessary party if he is subject to service of process and in his absence either: (1) complete relief can not be accorded among the parties; or (2) the absent person claims an interest in the subject matter and that his absence will, as a practical matter, either prejudice his ability to protect that interest or result in multiple or otherwise inconsistent obligations. Fed.R.Civ.P. 19(a).

If a person is deemed necessary under Rule 19(a), the court must then ascertain the extent to which prejudice will result to the non-party; the ability of the court to shape relief to avoid prejudice to absent persons; adequacy of relief available to parties in

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2004 WL 51269
**(Cite as: Not Reported in F.Supp.2d)**

the necessary party's absence; and the adequate remedy available to the plaintiff if the action is dismissed for nonjoinder. Fed.R.Civ.P. 19(b).

## IV. DISCUSSION

Dwiggins contends that the court should exercise is discretion to not hear the case on the basis of the doctrine of federal abstention and because the USAIG has failed to join certain necessary indispensable parties. (D.I.43) USAIG contends that abstention is not warranted because BCI is not present in the Florida litigation, and because the absent persons cited by Dwiggins are neither necessary nor indispensable. (D.I.51)

### A. Parties Necessary for Adjudication

The court concludes that the Florida Claimants are not necessary parties to the litigation within the meaning of Rule 19(a). First, the absence of the Florida Claimants does not affect the ability of the court to accord relief between the USAIG, Dwiggins, and BCI. *See* Fed.R.Civ.P. 19(a)(1). Second, while the Florida Claimants hold a cognizable interest in the outcome of the litigation, they are not without means to protect that interest. *See* Fed.R.Civ.P. 19(a)(2). First, Dwiggins offers no reason why any of the Florida Claimants could not intervene in the present case. Even if the court does not have personal jurisdiction to compel joinder, that is irrelevant to whether the Florida Claimants could intervene. Second, regardless of whether the Florida Claimants are formally joined as parties, all the facts presently before the court suggest that the Florida Claimants are capable of and are actively protecting their interests in this forum as evidenced by the fact that Dwiggins is represented by the same attorney that represents the Florida Claimants in the Florida litigation. Third, the close relationship between the Florida Claimants and Dwiggins is indisputable. Dwiggins was an entity created for the purpose of owning, financing and operating an aircraft to the benefit of American Virginia, the employer of each of the Florida Claimants. At least one of the Florida Claimants reportedly has an ownership interest in Dwiggins. Consequently,

while they may not be joined as parties in the case before this court, there are no facts to suggest that their interests are anything but protected.

**\*4** Dwiggins contends that a judgment in this court may not be preclusive as to the Florida Claimants. (D.I. 56 at 9-10) "Because they acquired their judgments against Dwiggins before this lawsuit was filed, the Florida [C]laimants are not privies of Dwiggins in this lawsuit." (*Id.* at 10) Plaintiff's assertion is without factual support. In the present case, the Florida Claimants acquired their judgments against Dwiggins more than six weeks after this suit was filed. *See generally* 32 Fla. Jur. Judgments & Decrees § 183 (2003). Moreover, Florida law recognizes that even where a nonparty is not in privity, if they exercise de facto control over the litigation, any judgment will still have preclusive effect. *Id* . § 190. In the present case, the court concludes that the Florida Claimants are in fact exercising control over Dwiggins' defense. Consequently, the court concludes that the Florida Claimants are not necessary parties.

The court also concludes that the Wilmington Trust Company ("WTC") is not a necessary party. WTC's role in the transaction is that of an owner-trustee, which is a fiction used for purposes of the financing transaction, but does not cause WTC to be a real party in interest. Therefore, it need not be joined for the action to proceed nor would its joinder affect the jurisdiction of the court.

### B. Abstention

Mindful of its discretion in deciding whether to entertain the instant declaratory judgment, and of the considerations suggested by the Third Circuit in *Summy,* the court concludes that the facts of this case do not warrant abstention. Abstention is a narrow exception warranted only where the identical issues and parties are present in a concurrent state proceeding. *Quackenbush,* 517 U.S. at 722-23. In the present case, Dwiggins' motion fails because BCI is absent from the Florida litigation. Dwiggins cites no precedent for the proposition that a dismissal or stay may be granted only as to one defendant. Moreover, such a

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2004 WL 51269
**(Cite as: Not Reported in F.Supp.2d)**

dismissal or stay would not serve the purposes of judicial economy and avoidance of duplicative and piece meal litigation. *See Summy,* 234 F.3d at 135.

The court notes, however, that its decision is predicated upon the allegations and claims as they currently exist between the parties. In the event that USAIG's remaining claim against BCI is resolved before trial, then retaining jurisdiction over the case may no longer be warranted. For that reason, the court will deny the motion to dismiss or abate without prejudice.

### V. CONCLUSION

Therefore, at Wilmington, this 5th day of January, 2004, having reviewed the motion of defendant Dwiggins to dismiss the complaint or in the alternative to stay the action (D.I.42), and USAIG's response thereto;

IT IS ORDERED that Dwiggins' motion to dismiss the complaint is denied and its motion to stay the action is denied without prejudice. (D.I.42)

D.Del.,2004.
U.S. Aircraft Ins. Group v. Dwiggins, L.L.C.
Not Reported in F.Supp.2d, 2004 WL 51269

Briefs and Other Related Documents (Back to top)

• 1:03CV00173 (Docket) (Feb. 05, 2003)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

E

Not Reported in F.Supp.                                                    **Page   1**
Not Reported in F.Supp., 1997 WL 699328
**(Cite as: Not Reported in F.Supp.)**

Not Reported in F.Supp., 1997 WL 699328
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court, D. Delaware.
**ENVIROMETRICS SOFTWARE, INC.,**
**Plaintiff,**
v.

**GEORGIA-PACIFIC CORPORATION,**
**Defendant.**
**No. CIV. A. 97-243-SLR.**

Nov. 4, 1997.

M. Duncan Grant , Esquire, Daniel V. Folt ,
Esquire, and Tara L. Lattomus , Esquire, of Pepper,
Hamilton & Scheetz LLP, Wilmington, Delaware,
for plaintiff.
Thomas C. Grimm , Esquire, and Karen L. Pascale
, Esquire, of Morris, Nichols, Arsht & Tunnell,
Wilmington, Delaware, for defendant.

MEMORANDUM OPINION

ROBINSON , District J.

INTRODUCTION

Pending before the court is a motion filed by
plaintiff EnviroMetrics Software, Inc. ("ESI") to
enjoin a related case pending in the United States
District Court for the Northern District of Georgia.
Also pending is a motion to dismiss the instant
litigation filed by defendant Georgia-Pacific
Corporation ("G-P"). The underlying facts to the
parties' dispute are relatively straightforward.

ESI is a Delaware corporation with its principal
place of business in New Castle, Delaware. (D.I.
10, Ex. B at ¶ 3) ESI is in the business of writing
computer software that may be used by companies
with industrial operations to monitor and to provide
reporting on air, water, and solid waste emissions
that are being generated by their industrial
processes. (D.I. 10, Ex. B at ¶ 2) G-P is a Georgia
corporation which manufactures paper and paper
products in numerous plants located throughout the
United States.

As of May 30, 1995, ESI and G-P entered into a
contract, entitled Computer Software License and
Services Agreement (the "License Agreement"),

whereby ESI licensed use of its "PlantWare"
software to G-P. The License Agreement expressly
set forth numerous warranties respecting PlantWare
(including     performance     and     documentation
warranties), as well as functional enhancements.
(D.I.7, ¶ 3).     G-P paid $1,000,000 to ESI for
PlantWare and over $400,000 for "consulting"
services in connection with PlantWare. (D.I.7, ¶ 4)

ESI and G-P also entered into a separate agreement
entitled Program and Documentation Maintenance
Agreement (the "Maintenance Agreement") as of
May 30, 1995, in which ESI agreed to provide G-P
with certain specified maintenance services for the
PlantWare software.     (D.I. 10, Ex. B at ¶ 7)
Pursuant to the terms of the Maintenance
Agreement, G-P owed ESI $20,000 as of July 15,
1996, and an additional $20,000 as of December 15,
1996, for services provided between June 15, 1996
and June 15, 1997. (D.I. 10, Ex. B at ¶ 8)

G-P asserts that during the two years following
execution of the License Agreement, it reported to
ESI "more than 100 deficiencies, defects and bugs
with     PlantWare...,     many     of     which     were
fundamental, and irremedial, flaws in the software,
and many others of which were not corrected within
the     time     period     specified     by     the     License
Agreement." (D.I.7, ¶ 5) ESI relatedly asserts that
when G-P completed payment of the $1,000,000
under the License Agreement on August 14, 1996,
G-P expressly "confirm[ed to ESI] that it accepted
the PlantWare software as satisfactory at the
conclusion of the acceptance period provided for in
the Licensing Agreement." (D.I. 10, Ex. B at ¶ 10)

The parties are in agreement that, at a meeting held
on April 22, 1997, G-P demanded reimbursement of
the entire $1,000,000 it had already paid under the
Licensing     Agreement,     contending     that     the
PlantWare software failed to meet warranty
specifications. (D.I. 7, ¶ 7; D.I. 10, Ex. B at ¶¶
11-13) This meeting was followed by a letter to Mr.
James E. Bostic, Jr., a Senior Vice President at G-P,
dated April 28, 1997 from David N. Hommrich,
President of ESI, whereby ESI offered a " 'no-risk'
set of services" by which ESI was to help G-P
successfully     implement     PlantWare     at     two
appropriate facilities.     Mr. Hommrich concluded
his letter with the following:     "I look forward to
hearing from you, and am hopeful that we can work

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in F.Supp.　　　　　　　　　　　　　**Page 2**
**(Cite as: Not Reported in F.Supp.)**

with you in the near future." (D.I.15, Ex. A)

Mr. Bostic received Mr. Hommrich's letter on May 2, 1997. Mr. Bostic and Mr. Hommrich had a follow-up conversation on May 12, 1997, as confirmed by a letter dated May 14, 1997 from Mr. Hommrich. Mr. Hommrich ended this letter as follows: "I'll be calling you today to discuss this matter. There are people here, Jim, who are prepared for this challenge and want to work very hard for you. I hope you'll take us up on this offer." (D.I.15, ¶¶ 7-10, Ex. B) During the course of these discussions and without advance warning to G-P, on May 7, 1997, ESI filed a complaint in this court against G-P. FN1 Count I of the complaint seeks a declaration under 28 U.S.C. § 2201 *et seq.* that ESI has not breached the License Agreement. Count II of the complaint is a $40,000 breach of contract claim under the Maintenance Agreement. FN2 Count III is a claim for attorneys' fees. FN3 (D.I.1) Not until May 16, 1997, when the complaint was served on G-P's registered agent in Georgia, did G-P understand that the parties' negotiations had been terminated. (D.I. 7, ¶¶ 9-10; D.I. 15, Exs. C, D)

FN1. Mr. Hommrich averred in this litigation that, "[a]t the time [ [ESI] filed suit, there were no ongoing settlement negotiations." (D.I. 10, Ex. B at ¶ 15) The record indicates otherwise.

FN2. G-P has refused to pay the $40,000 due and owing under the Maintenance Agreement.

FN3. Both the License Agreement and the Maintenance Agreement provide that if either G-P or ESI commences litigation to enforce its rights under the agreements, "the successful party in any such suit or action shall be entitled to recover from the other such sum as the court may adjudge reasonable as an attorney's fee in such suit or action and in any appeals therefrom." (D.I. 7, Ex. A at ¶ 13.10)

On June 25, 1997, G-P filed an action in Georgia state court against both ESI and ESI's President, David M. Hommrich, alleging breach of the License Agreement as well as fraud and negligent misrepresentations in connection with G-P's purchase of PlantWare. (D.I.10, Ex. A) Defendants ESI and Hommrich have removed the state court action to the United States District Court for the

Northern District of Georgia.

This court has jurisdiction pursuant to 28 U.S.C. § 1332. The question at issue is whether the court should exercise such jurisdiction under the Declaratory Judgment Act, 28 U.S.C. § 2201(a).

### DISCUSSION

Plaintiff ESI contends that the court must exercise its jurisdiction under the "first-filed" rule. As explained by the Third Circuit in *E.E.O.C. v. University of Pennsylvania,* 850 F.2d 969, 976-77 (3d Cir.1988),

[a]lthough exceptions to the [first-filed] rule are rare, courts have consistently recognized that the first-filed rule "is not a rigid or inflexible rule to be mechanically applied...." ... Bad faith ... and forum shopping have always been regarded as proper bases for departing from the rule.... Similarly, courts have rejected the rule when the second-filed action had developed further than the initial suit... and when the first-filing party instituted suit in one forum in anticipation of the opposing party's imminent suit in another, less favorable, forum....
The letter and spirit of the first-filed rule, therefore, are grounded on equitable principles. *See Columbia Plaza Corp. v. Security Nat. Bank,* 525 F.2d 620, 621 (D.C.Cir.1975); *cf. Kerotest Mfg. Co. v. C-O-Two Co.,* 342 U.S. 180, 183-84, 72 S.Ct. 219, 221-22, 96 L.Ed. 200 (1952) (under Federal Declaratory Judgment Act, factors relevant to wise judicial administration between coordinate federal courts "are equitable in nature"). To be sure, the rule's primary purpose is to avoid burdening the federal judiciary and to prevent the judicial embarrassment of conflicting judgments.... Yet, fundamental fairness dictates the need for "fashioning a flexible response to the issue of concurrent jurisdiction." ...
(citations omitted) (emphasis added).

Defendant G-P maintains that plaintiff at bar instituted suit first in Delaware "in anticipation of the opposing party's [i.e., G-P's] imminent suit in another, less favorable, forum," *id.* at 976, in this case Georgia state court. Not only do these circumstances constitute a recognized exception to the first-filed rule, but constitute as well a framework for analyzing the exercise of the court's discretion under the Declaratory Judgment Act, 28

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in F.Supp.                                                                                    Page    3
**(Cite as: Not Reported in F.Supp.)**

U.S .C. § 2201(a), which provides:
  In a case of actual controversy within its
  jurisdiction ... any court of the United States, upon
  the filing of an appropriate pleading, may declare
  the rights and other legal relations of any interested
  party seeking such declaration, whether or not
  further relief is or could be sought....

Declaratory relief is appropriately awarded when it
will " 'serve a useful purpose in clarifying the legal
relations in issue or terminate and afford relief from
the uncertainty, insecurity, and controversy giving
rise to the proceeding." '    *Gribin v. Hammer
Galleries,* 793 F.Supp. 233, 234 (C.D.Cal.1992)
(quoting *Tierney v. Schweiker,* 718 F.2d 449, 457
(D.C.Cir.1983)).     It is generally recognized,
however, that
  "[t]he Declaratory Judgment Act was not intended
  to enable a party to obtain a change of tribunal
  from a state to federal court, and it is not the
  function of the federal declaratory action merely to
  anticipate a defense that otherwise could be
  presented in a state action."  Wright & Miller, §
  2758, at 631-632.
*Gribin,* 793 F.Supp. at 235.    Indeed, the Third
Circuit has instructed courts to look critically at
"any attempt to circumvent the laudable purposes
of the Act, and [to] seek to prevent the use of the
declaratory action as a method of procedural
fencing, or as a means to provide another forum in
a race for res judicata."  6A J. Moore, J. Lucas &
G. Girtheer, Jr., *Moore's Federal Practice* ¶
57.08[5], at 57-50 (2d ed.1987) (footnote omitted).
*Terra Nova Ins. Co., Ltd. v. 900 Bar, Inc.,* 887
F.2d 1213, 1225 (3d Cir.1989);  *see also Nat'l
Union Fire Ins. Co. of Pittsburgh v. Freeport-
McMoRan Inc.,* 767 F.Supp. 568, 573
(D.Del.1991).    Venerable Third Circuit precedent
specifically has directed that "it is not one of the
purposes of the declaratory judgment acts to enable
a prospective ... defendant to obtain a declaration of
non-liability...." *Sun Oil Co. v. Transcontinental
Gas Pipe Line Corp.,* 108 F.Supp. 280, 282
(E.D.Pa.1953).    The "race to the courthouse" is
particularly inappropriate under circumstances
where " 'the party entitled to bring a coercive action
[has not] fail[ed] or delay[ed] in bringing it." '
*Gribin,* 793 F.Supp. at 236 (quoting *State Farm
Fire & Cas. Co. v. Taylor,* 118 F.R.D. 426, 429
(M.D.N.C.1988)    (emphasis in original)), and
where (aside from potential litigation costs) there is
no "accruing damage," *Crown Cork & Seal Co.,
Inc. v. Borden, Inc.,* 779 F.Supp. 33, 36

(E.D.Pa.1991);  *see also, ACandS, Inc. v. Aetna
Cas. & Sur. Co.,* 666 F.2d 819, 823 (3d Cir.1981)
(because "declaratory judgment relief was intended
to avoid ... the 'accrual of avoidable damages to one
not certain of his rights," ' it is proper to exercise
jurisdiction where judgment would "affect present
behavior, have present consequences and resolve a
present dispute.").

The record at bar demonstrates that defendant G-P
was dissatisfied with the performance of plaintiff
ESI's PlantWare software and initiated discussions
with ESI to resolve outstanding problems and
complaints.    It is apparent under the circumstances
presented that defendant G-P is "the party entitled to
bring a coercive action."    The parties had been
discussing G-P's complaints for only a matter of
days (and were still discussing possible resolutions)
when plaintiff ESI filed this lawsuit.    Such a time
frame from notice of breach to lawsuit surely is
insufficient to generate the magnitude of uncertainty
and insecurity typically associated with declaratory
judgment actions, especially where (as here) the
conduct at issue was already complete and the
damages record thus established.    Plaintiff ESI's
declaratory judgment action clearly was filed in
anticipation of a coercive action by G-P and, as
such, constitutes an inappropriate use of the
declaratory judgment remedy and an exception to
the first-filed rule.    The court declines to exercise
its discretionary jurisdiction over Count I under
these circumstances. FN4

FN4. These circumstances include as well the fact
that the Georgia action is directed at the President of
ESI, David M. Hommrich, an individual who is not
a party to the instant lawsuit.

With respect to Counts II and III, plaintiff has
carried its burden of persuading the court that the
remaining amounts in controversy are sufficient to
satisfy the $75,000 jurisdictional prerequisites of 28
U.S.C. § 1332.    The question rests on Count III,
which seeks attorneys' fees under the License and
Maintenance Agreements.    Although the court is
speculating to some extent in finding jurisdiction, it
cannot say to a "legal certainty that the plaintiff
cannot recover more than [$75,000]" under the
circumstances presented.  *Suber v. Chrysler Corp.,*
104 F.3d 578, 583 (3d Cir.1997) (citing *St. Paul
Mercury Indemnity Co. v. Red Cab Co.,* 303 U.S.
283, 288, 58 S.Ct. 586, 82 L.Ed. 845 (1938)).

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in F.Supp.                                                         **Page    4**
**(Cite as: Not Reported in F.Supp.)**

Having so concluded, the court recognizes that it is inefficient to have both this court and the Georgia court handling different pieces of the same dispute. Therefore, the court will order the parties to submit their respective positions on transferring this action to the Northern District of Georgia pursuant to 28 U.S.C. § 1404.

CONCLUSION

For the reasons stated, plaintiff's motion to enjoin is denied and defendant's motion to dismiss is granted in part and denied in part.

An order shall issue.

D.Del.,1997.
Envirometrics Software, Inc. v. Georgia-Pacific Corp.
Not Reported in F.Supp., 1997 WL 699328

Briefs and Other Related Documents (Back to top)

. 1:97CV00243 (Docket) (May. 07, 1997)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



F

22 F.3d 1106 (Table)                                                    **Page   1**
22 F.3d 1106 (Table), 1994 WL 108059 (Fed.Cir.)
**Unpublished Disposition**
**(Cite as: 22 F.3d 1106,  1994 WL 108059 (Fed.Cir.))**

NOTICE:      THIS   IS   AN   UNPUBLISHED
OPINION.

(The Court's decision is referenced in a "Table of
Decisions Without Reported Opinions" appearing in
the Federal Reporter. Use FI CTAF Rule 47.6 for
rules  regarding  the  citation  of  unpublished
opinions.)

United States Court of Appeals, Federal Circuit.
**PROFILE MANUFACTURING, INC., John F.**
**Gall, James R. Gall and Donald G.**
**Blondeau, Plaintiffs-Appellants,**
v.
**Ronald D. KRESS, Defendant-Appellee.**
**No. 93-1569.**

March 30, 1994.

E.D.Mich.

AFFIRMED.

Before ARCHER, Chief Judge, [FN*] SMITH,
Senior Circuit Judge, and  MICHEL, Circuit Judge.

DECISION

MICHEL, Circuit Judge.

  **\*\*1**  Profile Manufacturing, Inc., et al. (Profile)
appeal from the July 28, 1993 order of the United
States District Court for the Eastern District of
Michigan, Case No. 93-71042, granting Ronald D.
Kress' (Kress') motion to stay the district court case
pending the outcome of a related Michigan state
court action.    Because the district court did not
abuse its discretion in ordering the stay, we *affirm*.

DISCUSSION

 Profile and Kress have been involved in a series of
litigations  concerning  alleged  licensing  and
ownership rights under United States Patent No.
5,134,829 (the '829 patent), issued to Kress,
directed to a method and apparatus for mounting
molding on vehicles.    On February 17, 1993, Kress
filed a first Michigan state court action including,
*inter alia*, a Count V requesting declaratory
judgment that Kress was the sole inventor and owner
of the '829 patent and that a non-exclusive royalty-

free license granted to Profile had expired when
Kress involuntarily left Profile's employ.    Kress
also sought an order permanently enjoining Profile
from using the patented process.    The action was
removed to the district court and subsequently it was
voluntarily dismissed, by request of Kress, pursuant
to Rule 41(a)(1), Fed.R.Civ.P.

 Kress filed a second Michigan state court action on
March 9, 1993, containing a Count V identical to
that of the first suit except for the omission of a
request for injunctive relief.    One day later, on
March 10, 1993, Profile filed the district court
action in issue here.

 In its action, Profile sought declaratory judgment
of: (1) ownership of the '829 patent by Profile and
thereby no infringement;    (2) correction of
inventorship of the '829 patent to include James
Gall, Profile's current President, as a joint inventor
resulting in ownership by Profile;    and (3)
unenforceability of the '829 patent.    Kress filed a
motion to dismiss or, in the alternative, to stay the
district court action pending resolution of his second
state court action.

 The district court granted Kress' motion to stay
pending the outcome of the state court action.    The
court found that Profile's district court action was
filed "in direct response" to Kress' second state
court action.    *Profile Mfg., Inc. v. Kress,* No. 93-
71042, slip op. at 2 (E.D.Mich. July 28, 1993). The
court further found that the action involved issues
"concerning employment contracts and licenses that
must be addressed by the court first taking
jurisdiction," in this case the state court.    *Id.* (citing
*United States v. Mierzanka,* 89 F.Supp. 573, 574
(W.D.Mich.1949) ("[W]here a State court and a
court of the United States may each take
jurisdiction, the court which first takes jurisdiction
holds it to the exclusion of the other court ... [and]
its authority continues ... until the matter is finally
and completely disposed of."), *aff'd,* 181 F.2d 93
(6th Cir.1950).

 The district court subsequently denied Profile's
motion for reconsideration of the stay order.
Profile appealed here.

1. Jurisdiction:

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



**\*\*2** Before addressing the merits of Profile's appeal, we must first determine whether we have jurisdiction. Kress argues that this court does not have jurisdiction because the district court's order to stay is not final under 28 U.S.C. § 1295 (1988).

Under normal circumstances, a stay is not considered a final order. *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 10 n. 11 (1983). However, this court has previously held that where a litigation has been stayed for a prolonged or uncertain period of time so as to deprive the claims of practical remedy, a stay can be an appealable final order in certain circumstances. *Kahn v. General Motors Corp.,* 889 F.2d 1078, 1080, 12 USPQ2d 1997, 1998-99 (Fed.Cir.1989). Moreover, in *Moses H. Cone,* the Supreme Court held that a district court's stay order, pending resolution of a party's state court action presenting the same issue, was final for purposes of appellate jurisdiction because the party was "effectively out of court." 460 U.S. at 10-11. The Court noted that an order does not become final "merely because it may have the practical effect of allowing a state court to be the first to rule on a common issue." *Id.* at 11 n. 11. Rather, the Court stated: "We hold only that a stay order is final when the sole purpose and effect of the stay are precisely to surrender jurisdiction of a federal suit to a state court." *Id.*

This case presents a close question of our jurisdiction. Unlike the situation in *Moses H. Cone,* the stay here does not have the effect of completely surrendering the entire federal suit to the state court. However, the stay is for a prolonged and uncertain period of time, like the situation in *Kahn.* Profile argues that the district court's stay effectively puts it "out of court" at least on the issue of inventorship, thereby precluding it from having a timely resolution of that claim. Profile further argues that the indefinite delay leaves its right to practice the invention of the '829 patent in a state of uncertainty, during which it runs the risk of accruing damages. We are thus persuaded that in this case the stay is an appealable final order for jurisdictional purposes.

### 2. The Merits:

A decision to stay federal proceedings pending a state court determination is within the discretion of the district court and subject to an abuse of discretion standard on review. *Moses H. Cone,* 460 U.S. at 19.

The trial court's decision whether to stay must be made within the guidelines set out by recent controlling Supreme Court precedent. In *Colorado River Water Conservation District v. United States,* 424 U.S. 800 (1976), the Court stated that "[g]enerally, as between state and federal courts, the rule is that 'the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction,' " noting the existence of a "virtually unflagging obligation of the federal courts to exercise the jurisdiction given them." *Id.* at 817 (quoting *McClellan v. Carland,* 217 U.S. 268, 282 (1910)). In *Moses H. Cone,* the Court noted that in "exceptional" circumstances, a federal suit may be dismissed or stayed pending a state court action upon the "careful balancing of the important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction." 460 U.S. at 16. These factors include which court first assumed jurisdiction, the inconvenience of the federal forum, the desirability of avoiding piecemeal litigation, whether state or federal law provides the rule of decision on the merits, the adequacy of the state court to protect the parties' rights, and whether one of the actions has a vexatious or reactive nature. *Id.* at 15-16, 18 n. 20; *Colorado River,* 424 U.S. at 818. The Court noted that the list was not exhaustive, and that "[t]he weight to be given to any one factor may vary greatly from case to case." *Moses H. Cone,* 460 U.S. at 16.

**\*\*3** Profile argues on appeal that the district court abused its discretion in granting the stay because it not only failed to properly apply the balancing test set out in *Colorado River* and *Moses H. Cone,* but neglected even to cite these controlling precedents. Despite the shortcomings of the district court's written order, we conclude that the court actually made the necessary findings on the relevant factors, either explicitly or implicitly.

The court expressly found that the state court took jurisdiction prior to the federal court, and that the district court action, filed one day after the filing date of the second state court action, was obviously reactionary. Slip op. at 2. The court also noted that the central issues of the case, the contract and licensing claims relating to the ownership dispute,

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



were governed by state law. *Id.* Therefore, the district court explicitly made findings on three of the six factors enumerated by the Supreme Court in *Moses H. Cone* and *Colorado River.* On two remaining factors, avoiding piecemeal litigation and adequacy of the state forum, the court made implicit findings. The court suggested that piecemeal litigation would be minimized by allowing the contract and ownership issues to be decided first by the state court. *Id.* at 2-3. Additionally, the court noted that the contract and licensing issues central to the dispute could properly be decided by the state court. *Id.* The only enumerated factor not addressed by the district court was the inconvenience of the federal forum. Because both actions are located in the State of Michigan, this is clearly not a significant factor in this case.

 Profile contests the court's finding that state law provides the rule of decision on the merits, characterizing the district court dispute as turning on issues of infringement and inventorship, both of which are governed exclusively by federal law. Profile further argues that the state court provides an inadequate forum to protect its rights, relying on the following passage from *Moses H. Cone:*

 When a district court decides to dismiss or stay under *Colorado River,* it presumably concludes that the parallel state-court litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties.  If there is any substantial doubt as to this, it would be a serious *abuse of discretion* to grant the stay or dismissal at all.

 460 U.S. at 28 (emphasis added). According to Profile, the state court lacks jurisdiction to resolve the inventorship, infringement and unenforceability issues, therefore Profile argues that it does not provide an adequate forum for complete and prompt resolution of the issues between the parties. Consequently, Profile asserts that the district court abused its discretion.

 The law is clear that a state court has jurisdiction to resolve a defense to an action arising under state contract laws raising federal patent issues. *Lear v. Adkins,* 395 U.S. 653, 676 (1968); *In re Oximetrix, Inc.,* 748 F.2d 637, 641-42, 223 USPQ 1068, 1072 (Fed.Cir.1984). Moreover, these patent issues are not the central issues of the dispute between the parties. Ownership of the patent is. Although Profile requests a correction of inventorship, the context of the pleadings makes clear that this is done for the purpose of securing joint ownership of the patent to defeat any claims that Kress may have under the alleged license agreement. Furthermore, infringement was neither pleaded in the state court complaint nor raised as a compulsory counterclaim in the district court case. Therefore, Profile has not established a current threat of infringement litigation requiring immediate decision of its federal declaratory judgment action. Under these circumstances, the state forum is adequate.

 **4 Finally, we disagree with Profile that the stay will necessarily increase piecemeal litigation. Allowing the state court to first decide the contract and ownership issues could resolve the entire dispute between the parties, making the district court action unnecessary. If, on the other hand, the state court action does not resolve all of the disputes between the parties, resolution of the remaining issues may still be made by the district court.

### 3. Conclusion:

 The district court made explicit and implicit findings on substantially all of the factors set out by the Supreme Court that are relevant here. Based on those findings, we conclude that the district court performed an adequate balancing of the relevant factors in determining that this was an exceptional case warranting issuance of a stay. Even though we may have decided the issue differently, on this record, we cannot say that there was an abuse of discretion.

 FN* Chief Judge Archer assumed the position of Chief Judge on March 18, 1994.

 22 F.3d 1106 (Table), 1994 WL 108059 (Fed.Cir.), Unpublished Disposition

**END OF DOCUMENT**

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

